## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIDA LONGEVITY FUND, LP, on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs,<br><br>LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK,<br><br>     Defendant. | Civil Action No. 1:19-cv-06004-ALC-DCF<br><br>**[PROPOSED] STIPULATED CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER** |

**DEBRA FREEMAN, United States Magistrate Judge:**

WHEREAS, all the parties to this action (collectively the "Parties" and individually a "Party") request that this Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of nonpublic and competitively sensitive information that they may need to disclose in connection with discovery in this action;

WHEREAS, the Parties, through counsel, agree to the following terms; and

WHEREAS, this Court finds good cause exists for issuance of an appropriately-tailored confidentiality order governing the pretrial phase of this action,

IT IS HEREBY ORDERED that any person subject to this ORDER – including without limitation the Parties to this action (including their respective corporate parents, successors, and assigns), their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Order – will adhere to the following terms:

1. With respect to "Discovery Material" (i.e. information of any kind produced or disclosed in the course of discovery in this action) that a Party or person has designated as

1

"Confidential" pursuant to this Order ("Protected Discovery Material"), no Party or person subject to this Order may disclose such Protected Discovery Material (including all copies, excerpts, summaries, or compilations of such materials) to anyone else except as this Order expressly permits. A Party or person who receives Discovery Material is a "Receiving Party."

      2.     The Party or person producing or disclosing Discovery Material ("Producing Party") may designate as Confidential such material that it reasonably and in good faith believes consists of:

          a.     Previously non-disclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

          b.     previously non-disclosed material relating to ownership or control of any non-public company;

          c.     previously non-disclosed business plans, product-development information, or marketing plans;

          d.     any information of a personal or intimate nature regarding any individual; or

          e.     any other category of information this Court subsequently affords confidential status.

      3.     With respect to Discovery Material other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such Discovery Material as Confidential by stamping or otherwise clearly marking the document as "Confidential" in a manner that will not interfere with legibility or audibility.

4.      A Producing Party or its counsel may designate deposition exhibits or portions of deposition transcripts as Protected Discovery Material either by: (a) indicating on the record during the deposition that a question calls for Confidential information, in which case the reporter will bind the transcript of the designated testimony in a separate volume and mark it as "Confidential Information Governed by Protective Order;" or (b) notifying the reporter and all counsel of record, in writing, within 30 days after receipt of the final transcript of the deposition, of the specific pages and lines of the transcript that are to be designated Confidential. During the period between the deposition and 30 days after receipt of the final transcript, all Parties will treat the entire deposition transcript (including exhibits) as if it had been designated Confidential. The use of a document at a deposition shall not in any way affect its designation as Confidential.

5.      If at any time before the trial of this action a Producing Party realizes that it should have designated as Confidential Protected Discovery Material that it previously produced without such limitation the Producing Party may so designate such material by providing prompt notice to all prior recipients in writing, and providing recipients with replacement documents marked as required by Paragraph 4 of this Order. Thereafter, all Parties and persons subject to this Order will treat such Discovery Material as Confidential. All earlier versions of such documents shall be promptly destroyed or returned to the Producing Party.

6.      Nothing contained in this Order will be construed as: (a) a waiver by a Party or person of its right to object to any discovery request; (b) a waiver of any privilege or protection; or (c) a ruling regarding the admissibility at trial of any document, testimony, or other evidence.

3

       7.    Where a Producing Party has designated Discovery Material as Confidential, the Receiving Party and other persons subject to this Order may disclose such information only to the following:

          a.    the Parties to this action, their insurers, and counsel to their insurers;

          b.    counsel retained specifically for this action, including any paralegal, clerical, or other assistant that such outside counsel employs and assigns to this matter;

          c.    outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter;

          d.    any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

          e.    as to any document, its author, its addressee, its custodian, and any other person indicated on the face of the document or in metadata as having received a copy;

          f.    any deponent or trial witness that is employed or retained by the Producing Party;

          g.    any other witness who counsel for a Party in good faith believes may be called to testify at trial or deposition in this action,

4

provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

h.  any person a Party retains to serve as an Expert, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

i.  stenographers engaged to transcribe depositions the Parties conduct in this action; and

j.  this Court, including any appellate court, its support personnel, and court reporters.

8. For purposes of this Order, an "Expert" shall be defined as a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to assist in this action, and (2) at the time of retention, is not an employee of any party, or a subsidiary, parent, or affiliate of any party, and is not anticipated to become an employee of any party, or a subsidiary, parent, or affiliate of any party.

9. Before disclosing any Protected Discovery Material to any person referred to in subparagraphs 7(d), 7(f), 7(g), or 7(h) above, counsel must provide a copy of this Order to such person, who must sign a Non-Disclosure Agreement in the form annexed as an Exhibit hereto stating that he or she has read this Order and agrees to be bound by its terms. Said counsel must retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel either before such person is permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first. For the avoidance of doubt, nothing in Paragraph 7 shall impose any limitation on the ability of a Producing Party to disclose its own Protected Discovery Material. A Producing Party shall not be required to obtain an executed Non-

5

Disclosure Agreement from its own current or former employees with respect to disclosure of its own Protected Discovery Material.

10. All Protected Discovery Material filed with the Court, and all portions of pleadings, motions or other papers filed with the Court that disclose such Protected Discovery Material, shall be filed under seal with the Clerk of the Court. Any party filing a motion or any other papers with the Court under seal shall at the same time also publicly file a redacted copy of the same, via the Court's Electronic Case Filing system, that redacts only the Protected Discovery Material itself, and not text that in no material way reveals the Protected Discovery Material.

11. Within twenty-one (21) days after the filing of Protected Discovery Material under seal, any party may file a motion with the Court seeking the continued sealing of the information, or certain parts of the information, originally filed under seal. Notwithstanding the preceding sentence, in the event that Protected Discovery Material is filed under seal in connection with a memorandum of law in support of a motion or a memorandum of law in opposition to a motion, the time period to file a motion seeking continued sealing of the information, or certain parts of the information, originally filed under seal shall be extended to twenty-one (21) days after the date that any reply brief in further support of the original motion is due. The party filing the motion bears the burden of demonstrating that the standards for sealing have been met.

12. The information shall remain sealed pending ruling by the Court on any timely-filed motion. If no party timely files a motion seeking continued protection for the information under seal, the party making the filing shall advise the Court that the information can be unsealed.

6

13.     Any Party who objects to any designation of confidentiality may at any time before the trial of this action serve upon counsel for the Producing Party a written notice stating with particularity the grounds of the objection or request. If the Parties cannot reach agreement within ten (10) days of the written notice, counsel for all affected Parties will address their dispute to this Court in accordance with Paragraph 3 of this Court's Policies and Procedures. Pending the resolution of such motion by the Court and any subsequent appeal therefrom, the parties agree to treat the information that is the subject of the motion in accordance with the Producing Party's designation.

14.     Recipients of Protected Discovery Material under this Order may use such material solely for the prosecution and defense of this action and any appeals thereto, and not for any business, commercial, or competitive purpose or in any other litigation proceeding; provided, however, that, notwithstanding anything in here to the contrary, the parties may use Protected Discovery Material produced in this action in connection with the prosecution and defense of the *Iwanski v. First Penn Pacific Life Insurance Company* (E.D. Pa. Civil Action No. 18-1573) and *TVPX ARS Inc. v. Lincoln National Life Insurance Company* (E.D. Pa. Civil Action. 18-cv-02989) actions, subject to the terms of the Protective Order entered in those cases. No person who examines any information protected by this Protective Order shall disseminate orally, or by any other means, any protected information other than as permitted by this Order. Nothing contained in this Order, however, will affect or restrict the rights of any Party with respect to its own documents or information produced in this action or to documents publicly filed.

15.     Nothing in this Order will prevent any Party from producing any Protected Discovery Material in its possession in response to a lawful subpoena or other compulsory

7

process, or if required to produce by law or by any government agency having jurisdiction, provided that such Party gives written notice to the Producing Party as soon as reasonably possible. Upon receiving such notice, the Producing Party will bear the burden to oppose compliance with the subpoena, other compulsory process, or other legal notice if the Producing Party deems it appropriate to do so.

16. Each person who has access to Protected Discovery Material must take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

17. If a Producing Party produces Discovery Material which the Producing Party later claims should have been withheld on grounds of a privilege or other protection, including the work product doctrine, the disclosure of such Discovery Material, regardless of the circumstances of the disclosure, will not be deemed to waive the privilege or other protection, including work product protection, in connection with this litigation, or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

18. A Producing Party claiming that privilege or other protection applies to produced Discovery Material as described in Paragraph 17 may request the return or destruction of any such produced Discovery Material by identifying the Discovery Material and stating the basis for withholding such document from production. The possessing parties shall, within 14 days, destroy or return to the requesting party the identified Discovery Material and all copies thereof and shall expunge from any other document or material any information derived solely from the identified Discovery Material. The Producing Party shall, within 14 days of requesting the return or destruction of any such produced Discovery Material, provide a privilege log of that Discovery Material. Any party may thereafter seek a ruling from the Court with respect to the

8

issue of whether the identified Discovery Material is indeed privileged, whether by way of a motion to compel, motion for protective order, or otherwise. Such motion must be filed under seal as set forth in Paragraphs 10 through 12 above. No party may assert as a ground for challenging privilege the mere fact of the disclosure of Discovery Material identified by a Producing Party pursuant to this Paragraph.

19. Within 60 days of the final disposition of this action—including all appeals—all recipients of Protected Discovery Material must either return such material—including all copies thereof—to the Producing Party, or, upon permission of the Producing Party, destroy such material—including all copies thereof. In either event, by the 60-day deadline, the Receiving Parties must certify its return or destruction by submitting a written certification to the Producing Party that affirms it has not retained any copies, abstracts, compilations, summaries, or other forms of reproducing or capturing any of the Protected Discovery Material. Such written certification shall specifically state that the Party has returned or destroyed all personally identifiable information designated as Confidential in this action. Notwithstanding this provision, the attorneys that the Parties have specifically retained for this action may retain an archival copy of all pleadings, motion papers, transcripts, expert reports, legal memoranda, correspondence, or attorney work product, even if such materials contain Protected Discovery Material. Any such archival copies that contain or constitute Protected Discovery Material remain subject to this Order.

20. Any party for good cause shown may apply to the Court for modification of this Protective Order.

9

21. Nothing in this Order shall limit a Party's ability to file a motion or joint stipulation with the Court seeking additional levels of protection (i.e., Highly Confidential – Attorneys' Eyes Only) for certain categories of documents.

22. This Order will survive the termination of the litigation and will continue to be binding upon all persons to whom Protected Discovery Material is produced or disclosed.

23. This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

SO STIPULATED AND AGREED.

10

AGREED TO BY:

/s/    *Alan B. Vickery*

Alan B. Vickery
Andrew Villacastin
John F. LaSalle III
BOIES SCHILLER & FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: 212-446-2300
avickery@bsfllp.com
avillacastin@bsfllp.com
jlasalle@bsfllp.com

Motty Shulman
BOIES SCHILLER & FLEXNER LLP
333 Main St.
Armonk, NY 10504
914-749-8244
mshulman@bfsllp.com

*Attorneys for Defendant*

/s/    *Seth Ard*

Steven G. Sklaver (*pro hac vice*)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com

Seth Ard
Ryan C. Kirkpatrick
Nicholas C. Carullo
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
ncarullo@susmangodfrey.com

*Attorneys for Plaintiff*

The proposed order is adopted, except that:
any application to maintain the
confidentiality of documents or information
at trial shall be made to the trial judge,
in advance of trial.

So ordered: _Debra Freeman_

Hon. Debra Freeman, U.S.M.J.

Dated: November 15, 2019

11

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

VIDA LONGEVITY FUND, LP, on behalf of
itself and all others similarly situated,

               Plaintiff,

vs.

LINCOLN LIFE & ANNUITY COMPANY
OF NEW YORK,

               Defendant.

Civil Action No. 1:19-cv-06004-ALC-DCF

**NON-DISCLOSURE AGREEMENT**

I, _____, acknowledge that I have read and understand the Stipulated Confidentiality Agreement and Protective Order in this action governing the non-disclosure of Discovery Material that has been designated as Confidential. I agree that I will not disclose such Confidential Discovery Material to anyone other than for purposes of this litigation and that at the conclusion of the litigation I will return all discovery information to the Party or attorney from whom I received it. By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

 

_____

Dated:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIDA LONGEVITY FUND, LP, on behalf of itself and all others similarly situated, | Civil Action No. 1:19-cv-06004-ALC-DCF |
| Plaintiff, | |
| vs. | |
| LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, | |
| Defendant. | |

## AGREEMENT REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER

The parties hereby stipulate to the following provisions regarding the production of

documents in the above-captioned case. This stipulation is subject to and without waiver of any

objections that the parties may make in response to discovery.

### I.    DEFINITIONS

**A.**    **"Document"** shall be interpreted consistently with the Federal Rules of Civil Procedure.

**B.**    **"Electronically stored information"** or **"ESI,"** shall be construed consistent with the Federal Rules of Civil Procedure and as used herein, means and refers to computer-generated information or data of any kind, documents stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media.

**C.**    **"Native File(s)"** means ESI in the file type for the application in which such ESI is normally created, viewed, and/or modified.

**D.**    **"Metadata"** shall have its plain and ordinary meaning and, for purposes of this matter, references the data fields outlined in Section II.H below which describe the characteristics, origins, and usage of electronic evidence.

**E.**    **"Load File"** means a file or files containing a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the

1

individual documents, such as agreed-upon metadata, coded data, and OCR or extracted text.

F.    **"OCR"** means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable using appropriate software.

G.    **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

## II.    Production Format

Except as detailed below, all scanned paper and ESI should be converted/processed to

TIFF files, Bates numbered, and include fully searchable text.

### A.    Global De-Duplication

The parties shall de-duplicate ESI to avoid substantially duplicative productions. The parties will globally de-duplicate as follows:

1.    Electronic files: Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.

2.    Emails: Emails will be de-duplicated based upon MD5 Hash values for the email family, including parent object and attachments. The following fields will be used to create the unique value for each email: To; From; CC; BCC; Subject; Body; and binary stream of all attachments. Emails will be de-duplicated at a family level, including the message and attachment(s).

3.    Documents will be de-duplicated against the entire population and all custodians of a de-duplicated document will be listed in a "Custodial De-dupe" field.

### B.    Bates Numbering Documents

1.    All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; and (3) be sequential within a given document.

2.    If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing Party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

2

**C.   Images**

1.   Images should be single-page, Group IV TIFF files, scanned at 300 x 300 dpi resolution.

2.   Bates numbers should be endorsed on the lower right corner of all images.

3.   The file name for each image should be the Bates number reflected in the lower right corner of each image.

4.   The number of TIFF files per folder should not exceed 1,000 files.

5.   PowerPoint: All pages of the file should be scanned in notes view with one slide per page and the corresponding notes below the slide.

6.   All TIFF images shall display tracked changes, comments, and other rich data as displayed in the document, if the track changes were visible in the last saved version of the document, whenever possible.

7.   All TIFF-formatted documents will be produced in black and white. The producing party will comply with reasonable requests to produce particularly identified ESI in the original, color image of specific documents (e.g., where the color is relevant to the interpretation of the document). If a dispute arises as to the reasonableness of the request, the parties shall meet and confer in an effort to resolve their differences.

**D.   Text**

Searchable text of the entire document must be provided for every record, at the document level. Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. The text file name shall be the same as the Beginning Bates number the document. File names shall not have any embedded spaces.

3

### E. Paper Documents

1. Paper documents, including spreadsheets maintained in paper form[1], shall be produced as TIFF images (consistent with the specifications in Section II.C.) The production will include the appropriate load file which will, at a minimum, contain the following fields (described in detail in Section II.H.7.):

   i) Beginning Bates Number (BEGDOC)

   ii) Ending Bates Number (ENDDOC)

   iii) Beginning Attachment Bates Number (BEGATTACH)

   iv) Ending Attachment Bates Number (ENDATTACH)

   v) Custodian

   vi) Confidentiality

   vii) Page Counts (PAGECOUNT)

   viii) Text Path (TEXTLINK)

2. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized) unless linked as a document family.

### F. Production and Use of Native Files

1. The full path of the native file, as it exists in the production, must be provided in the .DAT file for the NATIVELINK field.

2. The number of native files per folder should not exceed 1,000 files.

3. For files not also imaged to TIFF format, a placeholder image that identifies the Bates number and confidentiality designation associated with the native document must be provided in lieu of a TIFF image. The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet. Produce the following documents in native format with an image placeholder unless redactions are required:

   i) Microsoft Excel documents (with all data unhidden) including CSV files that are not easily converted to TIFF images; and

   ii) Multimedia files (audio, visual, etc.)

---

[1] If spreadsheets are maintained in native form, the producing party may not intentionally produce them in paper form only. This does not, however, impose a duty on the producing party to search for duplicate electronic versions of spreadsheets identified in paper form.

4. To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to discuss options.

## G. Image Load File

The image key within each production load file shall be named the same as the Bates number of the page. The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database. The name of the image load file shall mirror the name of the delivery volume and should have an .opt extension (e.g., ABC001.opt). The volume names shall be consecutive (e.g., ABC001, ABC002, et. seq.).

The format is as follows:

*ImageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount*

*ImageID*: The unique designation that *Concordance®* and *Concordance Image®* use to identify an image.

*Note*: *This imageID key **must** be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. The format should be a 7-digit number to allow for the possible increase in the size of a production. The imageID should correspond exactly to the Begin Bates number in the document, including both the Bates prefix and the fixed length number (e.g. ABC0000001).*

*VolumeLabel*: Optional

*ImageFilePath*: The full path to the image file.

*DocumentBreak*: The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.

*FolderBreak*: Leave empty

*BoxBreak*: Leave empty

*Page Count*: Optional

5

**H.  Metadata**

1.  The metadata load file shall use the following standard Concordance delimiters:

   i)  Comma: ¶ (Character 20)

   ii)  Quote: þ (Character 254)

   iii)  Newline: ® (Character 174)

   iv)  Multi-line: ; (Character 59)

2.  All date fields shall be produced in "mm/dd/yyyy."

3.  A carriage-return line-feed shall be used to indicate the start of the next record.

4.  Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.) – i.e., a separate volume shall be created for each piece of media delivered.

5.  The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat extension (i.e., ABC001.dat).

6.  The volume names shall be consecutive for each produced source. (*i.e.,* ABC001, ABC002, *et. seq.*)

7.  The first record shall contain the field names in order of the data set forth in the chart below. The text and metadata of email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below.

6

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| BEGDOC | EDC0000001 | Begin Bates number (production | All |
| ENDDOC | EDC0000001 | End Bates number (production number)<br><br>**The PRODENDBATES field should be populated for single page | All |
| BEGATTACH | EDC0000001 | Begin Bates number of family unit (*i.e.*, Bates number of the first page of | All |
| ENDATTACH | EDC0000015 | Last Bates number of family range (*i.e.*, Bates number of the last page of the last | All |
| CUSTODIAN | Smith, John | Individual from whom the document originated | All |
| ALL CUSTODIANS | Smith, John; Thomas, Sue | All individuals who have the document | Email and Electronic documents ("E-docs") |
| PAGECOUNT | 1 | Total number of pages in the document | All |
| PARENTID | EDC0000001 | Begin Bates number of a parent document | All |
| ATTACHIDS | EDC0000015; EDC0000016 | Begin Bates number of each child attachment separated by ";" | All |
| FROM | John Smith | Author of the e-mail message | Email |
| TO | Coffman, Janice; LeeW [mailto:LeeW @MSN.com] | Main recipient(s) of the e-mail message<br>**semi-colon should be used to separate multiple | Email |
| CC | Frank Thompson [mailto: frank_Thomps on@cdt.com] | Recipient(s) of the "Carbon Copies" of the e-mail message<br>**semi-colon should be used to separate multiple | Email |

7

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| BCC | John Cain | Recipient(s) of "Blind Carbon Copies" **semi-colon should be used to separate multiple | Email |
| DOCUMENT SUBJECT | Board Meeting Minutes | Subject field extracted from the metadata of the native | Email and E-docs |
| EMAIL SUBJECT | Board Meeting Minutes | Subject field extracted from the metadata of an | Email |
| DOCUMENT TITLE | Board Meeting Minutes | The title of a document | E-docs |
| DOCUMENT AUTHOR | John Smith | Creator of the document | E-docs |
| CREATED DATE | 10/10/2010 | Date the file was created | E-docs |
| CREATED TIME[2] | 7:00 PM | Time file was created | E-docs |
| FAMILY DATE | 10/10/2010 | Families: Date of the parent document Single/Loose Files: Date of the Document *Email = Sent Date *Electronic Loose File = Last Mod Date | Email and E-docs |
| FAMILY TIME | 7:00 PM | Families: Time of the Parent document Single/Loose Files: Time of the Document *Email = Sent Time *Electronic Loose File = Last Mod Time | Email and E-docs |
| LAST MODIFIED DATE | 10/12/2010 | Date the document was last modified | E-docs |
| LAST MODIFIED TIME | 7:00 PM | Time document was last modified | E-docs |
| EMAIL SENT DATE | 10/12/2010 | Date the email was sent | Email |
| EMAIL SENT TIME | 7:00 PM | Time email was sent | Email |

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| FILE SIZE | 5,952,000 | File size in bytes | Email and E-docs |
| PATH | J:\Shared\Smit hJ\October Agenda.doc | Original Path to the document. Includes Folder information for Emails, Windows Directory structure for loose files | Email and E-docs |
| FILE_EXTEN | MSG | The file type extension | Email and E-docs |
| FILE TYPE | email | File Type: email, image, spreadsheet, presentation, | All |
| MD5 HASH | A558c8b82958 54fa69a2ad9a7 cc75ab7 | Unique identifier of the file | All |
| FILENAME | OctoberAgend a.doc | Original name of the file or subject of email | E-docs |
| TEXTLINK | .\ABC-002\TEXT\TE XT001\EDC-0000001.txt | Contains Path to .TXT files | All |
| NATIVELINK | .\ABC-001\NATIVES \NATIVES001 \EDC-0000001_Conf idential.xls | Contains path to native files | Email and E-docs |
| CONFIDENTIALITY | Confidential | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order. A blank indicates those documents that are not so designated. | All |
| REDACTION | Redacted | Indicates if the document has been redacted prior to production. A blank indicates that the document contains no redactions. | All |

9

8. Electronic file collection will be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches will be through MD5 Hash values.

I. **Databases:** To the extent a response to discovery requires production of information contained in databases, the parties will meet and confer to discuss an appropriate production protocol for information from such databases.

J. **Embedded Objects:** Embedded files in Microsoft Office and .RTF files will be extracted as separate files and produced as attachments to the file in which they were embedded.

K. **Compressed files:** Compression file types (i.e., .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in an iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

L. **Replacement files:** Any documents that are replaced in later productions shall be identified in a letter accompanying the production clearly designating such documents as replacements.

M. **Time Zone:** The preferred time zone of processing ESI is EST. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI. The producing party shall consistently produce all ESI processed using the same time zone.

## III. ELECTRONIC COLLECTION METHODS

The parties need not employ forensic data collection or tracking methods and technologies, but instead may make electronic copies for collection and processing purposes using widely-accepted best practices or methods described in manufacturers' and/or programmers' instructions, help menus, websites, and the like (e.g., .pst's, .zip's, etc.).

The parties shall utilize collection methodologies that avoid overwriting or altering pre-existing metadata such as file creation date or last modified date.

## IV. OTHER PRESERVATION OBLIGATIONS NOT AFFECTED

Nothing in this Order shall affect any other obligations of the parties to preserve documents or information for other purposes, such as pursuant to court order, administrative

order, statute, regulation, or in response to other pending or anticipated litigation. In addition, nothing in this Order shall eliminate or alter any party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

## V.    NO WAIVER OF RIGHT TO MODIFY

This Order may be revised or amended by the Court, and each party reserves the right to request the Court modify this Order.

SO STIPULATED AND AGREED.

11

AGREED TO BY:

/s/ *Alan B. Vickery*

Alan B. Vickery
Andrew Villacastin
John F. LaSalle III
BOIES SCHILLER & FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel: 212-446-2300
avickery@bsfllp.com
avillacastin@bsfllp.com
jlasalle@bsfllp.com

Motty Shulman
BOIES SCHILLER & FLEXNER LLP
333 Main St.
Armonk, NY 10504
914-749-8244
mshulman@bfsllp.com

*Attorneys for Defendant*

/s/ *Seth Ard*

Steven G. Sklaver (*pro hac vice*)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel: 310-789-3100
Fax: 310-789-3150
ssklaver@susmangodfrey.com

Seth Ard
Ryan C. Kirkpatrick
Nicholas C. Carullo
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
ncarullo@susmangodfrey.com

*Attorneys for Plaintiff*

So ordered: _____
            Hon. Debra Freeman, U.S.M.J.

Dated: November 15, 2019

12