UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIDA LONGEVITY FUND, LP, | |
| Plaintiff, | 19cv6004 (ALC) (DF) |
| -against- | **ORDER** |
| LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK, | |
| Defendant. | |

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action, which has been referred to this Court for general pretrial supervision (Dkt. 42), plaintiff Vida Longevity Fund, LP ("Plaintiff") seeks to assert a breach-of-contract claim on behalf of itself and a class of policyholders who held life-insurance policies with Lincoln Life & Annuity Company of New York ("Defendant"), based on Plaintiff's allegations that Defendant overcharged policyholders for life insurance premiums.  (*See* Complaint, dated June 27, 2019 ("Compl.") (Dkt. 1).)  Currently before the Court are (1) Plaintiff's motion to amend the Complaint to add a new plaintiff, who purportedly intends to assert claims, on behalf of a new putative class, grounded in allegations Defendant failed to refund certain overpayments (Dkt. 35), and (2) Defendant's motion to transfer this case to the United States District Court for the Eastern District of Pennsylvania (the "E.D. Pa.") (Dkt. 22).  For the reasons set forth below, Plaintiff's motion to amend and Defendant's motion to transfer are both denied.

# BACKGROUND

## A.      Factual Background

Plaintiff commenced this putative class action on June 27, 2019, alleging as follows:

Plaintiff is a Delaware limited partnership and the 100% owner of two life-insurance

policies that were issued by Defendant in 2002, in New York.  (Compl. ¶ 9.)  Plaintiff alleges

that these policies contain standardized language, and that it was not permitted to negotiate terms

other than the standard terms.  (*Id.* ¶ 14.)  In accordance with the standard terms of the policies,

Plaintiff was charged a monthly "cost of insurance" ("COI") charge.  (*Id.* ¶¶ 1, 4, 17.)  Plaintiff

alleges that, although the provisions in the policies regarding COI charges mandated that

Defendant set the rate for such charges based on "its expectations of future mortality experience"

(*id.* ¶ 17), and despite Defendant's awareness and acknowledgement of the continued

improvement of mortality experience (*see id.* ¶¶ 31-33), Defendant has nevertheless assessed

COI charges at the same rate for each of the past six years (*id.* ¶ 33).  Plaintiff alleges that

Defendant's failure to lower COI charge rates, based on decreasing mortality experience,

constitutes a breach of contract.  (*Id.* ¶¶ 44-48.)  Plaintiff also alleges that members of the

putative class (the "COI Overcharge Class") have all similarly held policies with Defendant, that

the policies have all contained the same standardized terms related to COI charges, and that the

putative class members have all been similarly overcharged.  (*Id*. ¶¶ 14, 36-43.)

In its motion to amend, Plaintiff seeks to add a new party, Andrew Nitkewicz

("Nitkewicz"), in his capacity as Trustee of the Joan C. Lupe Family Trust (the "Trust"), to

assert, on behalf of the Trust and a putative class of life-insurance policyholders who paid

premiums "for any period beyond the end of the policy month of the insured's death" (the

"Premium Refund Class"), a breach-of-contract claim based on allegations that Defendant failed

to refund those premiums as required by Section 3203 of the New York Insurance Law, which is deemed incorporated by reference into the provisions of the policies.  (*See* proposed First Amended Class Action Complaint, dated Feb. 28, 2020 ("Proposed Am. Compl.") (Dkt. 35-1) ¶¶ 40-42, 49-53, 59-63.)

### B.    Procedural History

Plaintiff filed the Complaint on June 27, 2019.  (Compl.)  Defendant filed an Answer to the Complaint on September 27, 2019.  (Dkt. 18.)

### 1.    Defendant's Motion to Transfer

On November 7, 2019, Defendant filed a motion to transfer this case to the E.D. Pa. (*see* Notice of Lincoln Life & Annuity Company of New York's Motion to Transfer Pursuant to 28 U.S.C. § 1404(A) (Dkt. 22); Memorandum of Law in Support of Defendant Lincoln Life & Annuity Company of New York's Motion to Transfer Pursuant to 28 U.S.C. § 1404(A) ("Def. Mem.") (Dkt. 23)), chiefly arguing that transfer would be proper because two other cases were already pending in that District, filed by the same Plaintiff's counsel, each against a life insurance affiliate of Lincoln National Corporation ("Lincoln"), and, as in this case, each challenging COI rates (*see generally* Def. Mem., at 2).

On December 2, 2019, Plaintiff opposed Defendant's motion.  (Memorandum of Law in Opposition to Defendant Lincoln Life & Annuity Company of New York's Motion to Transfer Pursuant to 28 U.S.C. § 1404(A) ("Pl. Mem.") (Dkt. 29); Declaration of Ryan C. Kirkpatrick, dated Dec. 2, 2019 ("Kirkpatrick Decl") (Dkt. 30).)  Plaintiff argues, in its opposition, that transfer would be improper because, *inter alia,* Defendant's principal place of business is in New York, it is only authorized to issue insurance policies in New York, and the conduct at issue in the Complaint is connected solely to New York.  (*See generally* Pl. Mem.)  Plaintiff asserts that

3

mere similarities in counsel and in the types of allegations made in other cases, against different Defendants, is insufficient to justify transfer.  (*Id.*)

In reply (*see* Reply Brief in Further Support of Defendant Lincoln Life & Annuity Company of New York's Motion to Transfer Pursuant to 28 U.S.C. § 1404(A) ("Def. Reply Mem.") (Dkt. 33); Declaration of Robert Sheppard, dated Dec. 9, 2019 ("Sheppard Decl.") (Dkt. 34)), Defendant reiterates its argument that the overlapping legal issues, the possibility of inconsistent legal rulings, and overlapping discovery in this case and the other cases brought in the E.D. Pa. warrant transfer of this case.  (*See generally* Def. Reply Mem.)

As discovery has proceeded in this case, the parties have sought to coordinate discovery in this case with discovery in the cases currently pending in the E.D. Pa.  (*See* Dkt. 31 (parties proposing a discovery schedule based on then-pending deadlines in the E.D. Pa.); Dkt. 40 (parties seeking a five-month extension of discovery based on, *inter alia,* the E.D. Pa.'s extension of discovery deadlines in the cases before it); Dkt. 43 (parties renewing their request for an extension of discovery, based on efforts to coordinate discovery and the E.D. Pa's extension of discovery deadlines in the cases before it).)

### 2.    Plaintiff's Motion To Amend

On November 5, 2019, following a telephone conference with the parties, this Court entered a Scheduling Order that provided, *inter alia,* that "[a]ny motions to amend the pleadings or to join any additional parties [were to] be filed no later than January 31, 2020."  (Dkt. 21.)

On February 28, 2020, Plaintiff filed a letter motion seeking leave to amend to join the Trust (by Nitkewicz, as Trustee) as a plaintiff in this action, and to assert claims on behalf of a class of plaintiffs who, Plaintiff alleges, were not refunded policy premiums paid past the month of the insured's death.  (Letter from Seth Ard, Esq., dated Feb. 28, 2020 ("Pl. Ltr.") (Dkt. 35).)

Plaintiff's letter asserts that this motion is timely based on a stipulated extension of the amendment deadline (*see id*.), and very briefly argues that the proposed amendment should be allowed because (1) "[t]he claims of the Plaintiff and the Trust satisfy [Fed. R. Civ. P.] Rule 20(a)(1)'s requirement that they be logically related and involve common questions of law or fact; (2) if joinder is not permitted, Plaintiff and the putative class "will argue that members of the COI Overcharge Class would be barred from bringing premium refund claims against Lincoln NY in the future"; and (3) that Plaintiff "worked quickly and in good faith to add the Trust and the additional cause of action."  (*Id.*, at 2-3.)

On March 6, 2020, Defendant filed a letter in opposition to Plaintiff's letter motion. (Letter from Alan B. Vickery, Esq., dated Mar. 6, 2020 ("Def. Ltr.") (Dkt. 38).)  Defendant's principal argument against amendment is that the Plaintiff's claim and the Trust's claims are unrelated, as Plaintiff and the Trust hold different types of life-insurance policies, as neither would belong to the putative class that the other purports to represent, and as their claims are not asserted "jointly, severally, or in the alternative," and do not share common questions of law or fact.  (*Id.,* at 2-4.)  Defendant also argues that Plaintiff's expressed concern regarding the potential impact of *res judicata* is misplaced, as Plaintiff would not have standing to raise the claims that the Trust seeks to assert.  Finally, Defendant contends that Plaintiff's motion is improper as it was brought via a cursory letter, and that it was asserted in bad faith and for improper purposes, such as undue delay.  (*Id.*, at 4-10.)

On March 13, 2020, Plaintiff filed a reply in further support of its motion.  (Letter from Seth Ard, Esq., dated Mar. 13, 2020 ("Pl. Reply Ltr.") (Dkt. 39).)  In reply, Plaintiff disputed Defendant's contention that its letter was filed in bad faith and would cause undue delay, in light of Defendant's consent to an extension of the deadline for amendment.  (*Id.,* at 1.)  Plaintiff also

elaborated on its assertion that the claims of Plaintiff and the Trust's claim were related because, according to Plaintiff, (1) members of the classes which the Plaintiff and the Trust purport to represent could, in theory, overlap; and (2) all policies, including Plaintiff's, are subject to the Insurance Law, and Plaintiff could potentially assert the same claim as the Trust at some later date, upon the death of the insureds.  (*Id.,* at 3-4.)[1]

## DISCUSSION

## I.    APPLICABLE LEGAL STANDARDS

### A.    Motions To Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that a "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, a motion to amend should be denied "if there is an 'apparent or declared reason – such as undue delay, bad faith or dilatory motive . . .[,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'"  *Dluhos v. Floating and Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Where a proposed amendment adds new parties, the propriety of amendment is governed by Rule 21 of the Federal Rules of Civil Procedure," *Toliver v. Office-Dep't of Corr. NYC,* No. 10cv5354 (DAB), 2013 WL 3783727, at *4 (S.D.N.Y. July 9, 2013) (adopting report and recommendation), which provides that, "[o]n motion or on its own, the court may at any time, on

---

[1] Defendant also raised in its opposition, and Plaintiff addressed in reply, an objection to Plaintiff's proposing that the time period for the claims of the Premium Refund Class should track the time period for the claims of the COI Overcharge Class.  The parties dispute whether the statute of limitations would bar certain of the Premium Refund Class's claims, or if the Trust's claims could be found to "relate-back" to the date of Plaintiff's filing.  As the Court finds that, in any event, leave to amend should be denied, the Court need not address the relation-back issue here.

just terms, add or drop a party," Fed. R. Civ. P. 21. "In deciding whether to permit joinder, courts apply 'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Toliver*, 2013 WL 3783727, at *4 (citation omitted). Thus, as long as the movant demonstrates that it meets the requirements for permissive joinder (which are set out in Rule 20), the proposed joinder will be allowed, "absent undue delay, bad faith, prejudice, or futility." *Id.*

Under Rule 20(a)(1),

> . . . Persons may join in one action as plaintiffs if:
>
> > (A)   they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*
> >
> > (B)   any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1) (emphasis added). "'The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits' where appropriate." *Green v. Beer,* No. 06cv4156 (KMW) (JCF), 2009 WL 3401256, at *6 (S.D.N.Y. Oct. 22, 2009) (citation omitted).

With respect to the requirement that the plaintiffs' claims arise from the "same transaction [or] occurrence," Fed. R. Civ. P. 20(a)(1)(A), "[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20," *Agnesini v. Doctor's Assocs., Inc.,* 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (citation omitted). Rather, the determination regarding whether to permit joinder of plaintiffs is made on a "case-by-case basis." *Green,* 2009 WL 3401256, at *6. In reaching a determination, courts consider "whether the essential facts of the various claims are so *logically connected* that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit," *Ardolf v.*

*Weber,* 332 F.R.D. 467, 479 (S.D.N.Y. 2019) (quoting *Deskovic v. City of Peekskill,* 673 F.

Supp. 2d 154, 166 (S.D.N.Y. 2009)).  With respect to the requirement that plaintiffs' claims raise

"any question of law or fact" in common, Fed. R. Civ. P. 20(a)(1)(B), courts have held that the

common questions must be "material to the issue of defendants' alleged liability," *Green,* 2009

WL 3401256, at *6.

      Ultimately, the plaintiff bears the burden of establishing that joinder is appropriate.

*Kalie v. Bank of Am. Corp.,* 297 F.R.D. 552, 559 (S.D.N.Y. 2013)

      **B.**    **<u>Transfer of Venue</u>**

      Motions for transfer of venue are governed by 28 U.S.C. § 1404, which provides that,

"for the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  Thus, in considering a motion to transfer, courts engage in a two-step

inquiry, assessing:  (1) whether the action "might have been brought" in the proposed forum, and

(2) whether granting a transfer would promote both the convenience of the parties and witnesses

and the interests of justice.  *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.

Supp. 2d 433, 436 (S.D.N.Y. 2000); *DealTime.com, Ltd. v. McNulty,* 123 F. Supp. 2d 750,

754-55 (S.D.N.Y. 2000).  As to the first factor, a district in which the action might have been

brought "has been interpreted to mean a district where venue might have been proper and where

the defendant would have been subject to process."  *See Dwyer v. Gen. Motors Corp.,* 853

F. Supp. 690, 691-92 (S.D.N.Y. 1994) (quoting *Hoffman v. Blaski,* 363 U.S. 335 (1960)).

      The question of where venue is proper is governed by 28 U.S.C. § 1391, which provides,

in relevant part, that a civil action may be brought in the district where the defendant "resides,"

28 U.S.C. § 1391(b)(1), or a district "in which a substantial part of the events or omissions

giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2).[2]  For purposes of the statute, a

corporate defendant is "deemed to reside . . . in any judicial district in which such defendant is

subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C.

§ 1391(c)(2).

To evaluate whether granting a transfer would promote the convenience of the parties and

witnesses and the interests of justice, district courts consider a number of factors, including:

> (1) the convenience of witnesses; (2) the availability of process to
> compel the attendance of unwilling witnesses; (3) the convenience
> of the parties; (4) the locus of operative facts; (5) the location of
> relevant documents and relative ease of access to sources of proof;
> (6) the relative means of the parties; (7) the forum's familiarity with
> the governing law; (8) the weight accorded the plaintiff's choice of
> forum; and (9) trial efficiency and the interests of justice, based on
> the totality of circumstances.

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446,

459 (S.D.N.Y. 2010) (internal citation omitted); *see also Phillips*, 955 F. Supp. 2d at 214 (citing

*New York Marine and General Ins. Co. v. Lafarge North America, Inc.,* 599 F.3d 102, 112-13

(2d Cir. 2010) *and AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty, Wash.,*

675 F. Supp. 2d 354, 367-72 (S.D.N.Y. 2009)).  Courts have discretion in weighing these factors.

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("There is no rigid

formula for balancing these factors and no single one of them is determinative.  Instead,

weighing the balance is essentially an equitable task left to the Court's discretion." (internal

quotation marks and citations omitted)).

---

[2] The venue statute also provides that, "if there is no district in which an action may
otherwise be brought as provided in this section," then venue is proper in "any judicial district in
which [the] defendant is subject to the court's personal jurisdiction with respect to such action."
28 U.S.C. § 1391(b)(3).

Ultimately, the movant has the burden of "establishing the propriety of transfer by a clear and convincing showing." *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 237 (S.D.N.Y. 2013) (*adopting report & recommendation* (quoting *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003))); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

## II.    PLAINTIFF'S MOTION TO AMEND

Although Defendant's motion to transfer this case was briefed prior to Plaintiff's seeking leave to amend the Complaint (*see* Background, *supra*, at Section (B)), the Court will first address Plaintiff's motion to amend because the scope of claims and parties in this case could impact the propriety of transfer.  For the reasons discussed below, the motion to amend is denied.

As a preliminary matter, the Court notes that Defendant has argued that Plaintiff's motion to amend is procedurally improper, as this Court's Individual Practices only permit parties to file letter motions "where counsel believe that a formal motion and full briefing is not necessary" (Def. Ltr., at 9 (quoting this Court's Individual Practices, at Section I(C))), and as, according to Defendant, "Plaintiff's two and a half page (double-spaced) [letter] motion does not even attempt to explain how 'justice so requires' permitting the addition of what is essentially a new class with new claims, where the new claims are wholly divorced from those of the existing putative class" (*id.*, at 10).  Defendant has a valid point, as Plaintiff filed its cursory letter motion with full knowledge that it would be contested by Defendant, and, by barely touching on the points critical to whether amendment should be permitted in this instance, Plaintiff essentially forced Defendant to be the first to raise and brief most of the legal issues implicated by the motion. When Plaintiff then filed a reply that was four times the length of its opening letter, Defendant lost the opportunity to respond to arguments that should have been raised in the first instance.

10

Whether or not this represented gamesmanship by Plaintiff, it arguably placed Defendant at a disadvantage, and the Court would be entirely justified in not considering any of the arguments made by Plaintiff on reply.  *See, e.g., Mango v. BuzzFeed, Inc.,* 397 F. Supp. 3d 368, 375 (S.D.N.Y. 2019) (declining to consider arguments first raised in reply papers).

Nonetheless, the Court will consider those arguments, as, even taking into account every point that Plaintiff has now raised, Plaintiff's motion fails on the merits.  As set out above, the amendment standard of Rule 15, which governs the Court's analysis as to whether leave to amend should be granted, is liberal.  *See* Fed. R. Civ. P. 15(a)(2).  Still, leave to amend is appropriately denied on the ground of futility, where the proposed amendment to join a party would not satisfy the standards for permissive joinder set forth in Rule 20.  *See Toliver,* 2013 WL 3783727, at *4.  Here, the Court concludes that Plaintiff's motion cannot satisfy the Rule 20 requirements, and therefore should be rejected on the grounds of futility.[3]

Before Plaintiff may properly join the Trust as a plaintiff in this action under Rule 20(a)(1), Plaintiff must adequately demonstrate that Plaintiff and the Trust "assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences;" *and* "that any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  Plaintiff makes a cursory argument that "the policy language in both the Trust's insurance policies and the insurance policies otherwise at issue in this case specify the amount of the [premium payments] and the frequency on which those premiums will be paid . . . [a]s a result, there is likely overlap between members of the proposed classes, and

---

[3] Defendant raises additional arguments – aside from futility – as to why the amendment should not be allowed, despite the liberal standard of Rule 15.  In particular, Defendant argues, at some length, that the proposed amendment should be rejected on the grounds of undue delay (*see* Def. Ltr., at 5-6), bad faith (*see id.*, at 6-9), and undue prejudice (*see id.*, at 9).  The Court need not reach any of these arguments, as it finds that, in any event, the amendment would be futile.

both involve allegations that Lincoln overcharged class members in breach of the contract." (Pl. Ltr., at 2-3; *see also* Pl. Reply Ltr. ("[t]he claims of the members of both classes are 'logically related' [because] they all assert that Lincoln NY breached the terms of their policies by overcharging them . . . [and] these overlapping claims arise from the exact same insurance policies"[4])). Plaintiff also asserts, without explaining, that "resolution of the Premium Refund Class's claims will involve determining whether New York Insurance Law § 3203(a)(2) applies to all the Lincoln NY policies at issue."[5] (Pl. Reply Ltr., at 3.) From this briefing, the Court gleans two potential (though underdeveloped) arguments for permissive joinder: first, that Plaintiff's claim and the Trust's claim arise from "the same transaction and occurrence" and share "question[s] of law or fact" sufficient to permit joinder and, second, that joinder is warranted because of "overlap" between members of the putative classes.

First, the Court rejects any argument that Plaintiff may be trying to assert that it and the Trust share a joint claim for relief. Starting with the obvious, Defendant correctly notes (without dispute from Plaintiff) that Plaintiff does not have a claim for a premium refund, and therefore cannot assert the same claim that the Trust would assert if amendment were permitted. (Def. Ltr., at 1-3.) Similarly, the Trust does not have an overcharge claim, and therefore cannot assert

---

[4] To the best of the Court's understanding, the claims do not actually arise from the "exact same policies," but rather, from separate life-insurance policies with similar or identical language.

[5] Plaintiff's abbreviated briefing in this respect does not address the obvious question of why, if – as Plaintiff concedes – it would not qualify as a member of the proposed Premium Refund Class, this case would require any determination as to whether Section 3203(a)(2) of the New York Insurance Law applies to Plaintiff's own policies. Plaintiff assumption that, upon the eventual deaths of its insureds, Defendant would likely fail to refund premium overpayments, and Plaintiff's accompanying argument that it would then require a determination of the legality of that conduct (*see* Pl. Reply Ltr., at 3-4), is too speculative to serve as a foundation for joinder in the case that is actually before the Court.

the claim that Plaintiff has pleaded in this action.  (*Id.*)  Thus, for the Court to conclude that

joinder should be permitted in this case, it would need to conclude that Plaintiff's claim that

Defendant breached the terms of Plaintiff's policies by allegedly overcharging insurance

premiums arose "from the same transaction or occurrence" as the Trust's proposed claim that

Defendant breached a separate policy by allegedly failing to refund premium payments, and that

the two claims raise common questions of law or fact.  Fed. R. Civ. P. 20(a)(1).

      Determinations regarding whether joinder is appropriate must be made on a "case-by-

case basis," *Green,* 2009 WL 3401256, at *6, but, based on precedent, it is difficult to see how

the claims of Plaintiff and the Trust could be said either to arise from the same transaction or

occurrence, so as to satisfy the requirements of Rule 20(a)(1)(A).  Courts in this Circuit have

found that requirement unsatisfied, and have thus denied joinder where, for example, plaintiffs

have sought to assert similar claims against the same lender based on separate loan transactions,

*Kalie,* 297 F.R.D. at 558, or where plaintiffs have sought to assert breach-of-contract claims

against the same insurance company for denying separate claims for property damage, *see, e.g.,*

*Baiardi v. Standard Fire Ins. Co.,* No. 13cv5912 (SJF) (AKT), 2013 WL 6157231, at *2

(E.D.N.Y. Nov. 21, 2013) (finding that, despite plaintiffs' properties each being damaged as a

result of Hurricane Sandy, each plaintiff held a separate policy, for separate properties, with

unique damage, and joinder was therefore improper).  These examples strongly suggest that, in

this case – where the claims of Plaintiff and the Trust allege breaches of separate policies, based

on separate and distinct policy terms – joinder would not be proper.  Furthermore, the fact that

each alleged breach is premised on entirely different conduct by Defendant (in one claim, failing

to adjust COI charges, and in the other, failing to make certain refunds), distinguishes this case

from those in which plaintiffs have properly sought to join claims based on the same conduct by

the defendant.  *See Ardolf,* 332 F.R.D. at 480 (permitting joinder of plaintiffs' claims where, *inter alia,* plaintiffs all alleged that they were injured as part of a common "*modus operandi*" by defendant); *Agnesini,* 275 F.R.D. 456, 458-59 (permitting joinder of product liability claims where two consumers were each injured by the same defect in the same product by the same manufacturer).  Here, Plaintiff has failed to demonstrate that its claims, and the claims that would be asserted by the Trust, are so "logically related" as to satisfy the requirements for permissive joinder.

Permissive joinder also requires common questions of law or fact between the plaintiffs. Fed. R. Civ. P. 20(a)(1)(B).  Yet, aside from the fact that Plaintiff and the Trust both seek to assert breach-of-contract claims against Defendant, Plaintiff does not point to any specific questions of law or fact that they share, and that are "material to the issue of [Defendant's] alleged liability."  *Green,* 2009 WL 3401256, at *6.  Indeed, Plaintiff's contract claim not only involves different alleged conduct by Defendant, but will require interpretation of policy language that is entirely separate from the language on which the Trust would rest its claim.  (*See generally* Proposed Amended Complaint.)  Further, as Plaintiff itself explains, the claim that the Trust seeks to assert would require the application of a section of the Insurance Law that is not applicable to Plaintiff's own claim.  (*See generally id.;* Pl. Reply Ltr.)  There is no suggestion, moreover, that determination of whether Defendant breached its contracts with Plaintiff by failing to adjust COI charges based on mortality rates would impact, in any way, the determination of whether Defendant also breached its contract with the Trust by failing to refund certain premium payments after the death of an insured.  (*See generally* Pl. Ltr.; Pl. Reply Ltr.) Plaintiff has therefore failed to meet its burden to show that the claim that it has asserted and the

claim that the Trust proposes to assert share common questions of law or fact that would be material to the question of Defendant's liability.

As to Plaintiff's second potential argument – that members of the putative *classes* could overlap, thus resulting in common questions of law or fact for certain class members (even if not for Plaintiff and the Trust themselves) – Plaintiff cites to no authority, and this Court has located none, that would permit joinder of plaintiffs in a circumstance that, as to the named plaintiffs alone, would constitute misjoinder, but where some persons or entities might be eligible to be members of both proposed classes.[6] Furthermore, no class has yet been certified, and if a motion for class certification were to fail, then allowing joinder now, based solely on the potential for overlap between putitive classes, would merely require the Court to address the misjoinder at a later date in this action.  Plaintiff's failure to explain how joinder would be appropriate under Rule 20(a)(1) in these circumstances, let alone how it would serve Rule 20's purpose of "promot[ing] trial convenience and [] expedit[ing] the resolution of disputes," *Green,* 2009 WL 3401256, at *6, compels the Court to conclude that Plaintiff has not satisfied the Rule's requirements.

Finally, the Court notes that Plaintiff cannot overcome its failure to satisfy Rule 20 by hypothetical and poorly explained concerns of potential future prejudice to putative class members.  Citing the doctrine of *res judicata*, Plaintiff argues that, if joinder is not permitted, then Defendant may argue "that members of the COI Overcharge Class would be barred from bringing premium refund claims against [Defendant] in the future."  (Pl. Ltr., at 3 (citations

---

[6] The Court notes that Plaintiff has not specifically named any potential member of the putative COI Overcharge Class who would also be a potential member of the proposed Premium Refund Class, nor has Plaintiff analyzed how such person's (or entity's) claims would independently satisfy the requirements of Rule 20(a).

omitted).  Essentially, Plaintiff is suggesting that, regardless of whether it currently has a claim relating to Defendant's failure to refund premiums, it might have one in the future (should its insured(s) die), and, more importantly, members of the proposed COI Overcharge Class might have such a claim now, and, if they fail to assert that claim in this action when it could have been possible for them to do so, then Defendant might argue later that these class members have lost their chance.  (*See* Pl. Reply Ltr., at 4.)  Plaintiff, however, has cited no authority for the bizarre proposition that, if the Court *denies* the motion for joinder, by making a judicial finding that the premium-refund claim sought to be asserted by the Trust is too *dissimilar* from Plaintiff's existing COI-overcharge claim, then either Plaintiff or any member of the class it purports to represent would be barred from later asserting that dissimilar claim.[7]  Moreover, if the Court adopts Defendant's position that Plaintiff, itself, has no premium-refund claim, and that joinder of the Trust – for purposes of asserting such a claim – is impermissible, then Defendant would presumably be barred by principles of judicial estoppel from later taking the contrary position that a premium-refund claim should have been asserted here.  *See, e.g., In re Adelphia Recovery Tr.,* 634 F.3d 678, 695 (2d Cir. 2011) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position" (quoting *DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010)).

In sum, a hypothetical future argument by Defendant that may never be raised and that would likely have no merit cannot overcome Plaintiff's failure, on its present motion, to

---

[7] In fact, Plaintiff's failure to explain how *res judicata* would apply only underscores Plaintiff's failure to explain any material similarities between its claim and the claim that the Trust seeks to assert.

demonstrate that joinder is permissible under Rule 20.  As Plaintiff's proposed amendment

would be futile because joinder here would be improper, the motion to amend is denied.

## III.   DEFENDANT'S MOTION TO TRANSFER

Having denied Plaintiff's motion to amend, the Court next turns to Defendant's assertions

that this case ought to be transferred to the E.D. Pa.  As discussed above, this inquiry, under

28 U.S.C. § 1404(a), will require the Court to assess, first, whether the action might have been

brought in the E.D. Pa., and second, whether transferring the case to that district would, based on

the balance of a number of factors, promote both the convenience of the parties and witnesses

and the interests of justice.  (*See* Discussion, *supra*, at Section I(B).)  In this instance, while the

Court finds that the action could have been brought in the forum to which transfer is sought, the

relevant factors weigh against transfer, and Defendant's motion for transfer is therefore denied.[8]

### A.   Defendant Has Adequately Shown That This Action Could Have Been Brought in the E.D. Pa.

On the threshold question of whether this action "might have been brought" in the district

to which transfer is sought, 28 U.S.C. §1404(a), the Court first looks to whether venue would

have been proper in the E.D. Pa., under 28 U.S.C. § 1391(b).  As discussed above,

Section 1391(b) has three subsections, any one of which, if satisfied, would make venue proper.

Plaintiff correctly notes that subsection (b)(2) (which allows, in relevant part, for venue in "a

judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred") does not apply, as the "Complaint does not allege, and [Defendant] does not claim,

---

[8] Although Judge Carter's May 19, 2020 Order of Reference initially referred Defendant's transfer motion to this Court for a report and recommendation (*see* Dkt. 42), Judge Carter amended that Order of Reference on July 21, 2020 to recharacterize the transfer motion as "non-dispositive" (*see* Dkt. 44), reflecting that this Court may resolve that motion under 28 U.S.C. Section 636(b)(1)(A), *see Gendreau v. Kigawa*, No. 13cv3217 (LTS( (DF), 2014 WL 6487426, at *1 n.1 (S.D.N.Y. Nov. 14, 2014).

that any of the events giving rise to the claim occurred in [the E.D. Pa.]."  (Pl. Mem., at ECF 6.[9])

Further, subsection (b)(3) does not come into play here, as that subsection may only be invoked

where there is *no other* district in which venue would be proper (*see supra*, at n.2) and, in this

case, there is no dispute that venue is proper in *this* District (where "a substantial part of the

events or omissions giving rise to the claim" did occur).[10]  Under subsection (b)(1), however,

venue would have been proper in the E.D. Pa. based on Defendant's pace of residence, if

Defendant may be deemed to "reside" in that district, and, in this instance, the Court finds that

Defendant may, in fact, be deemed to reside in the E.D. Pa.

   In its moving brief, Defendant nowhere states where it "resides," for purposes of

subsection 1391(b)(1).  In fact, Defendant never mentions its place of "residence," and, to the

extent it asserts facts relevant to the point, it merely states, with no supporting evidence, that its

own "principal place of business" is "in Pennsylvania" (although it does not specify a district),

and that the corporate headquarters of Lincoln, of which Defendant is apparently a "life

insurance affiliate," is in Radnor, Pennsylvania – which, the Court notes, lies within the E.D. Pa.

(*See* Def. Mem., at 4; *see also id*. at 2 (identifying Lincoln).)  Nonetheless, under the venue

statute, all that Defendant need show to establish "residence" in a particular district is that it is

"subject to the court's personal jurisdiction [there,] with respect to the civil action in question,"

28 U.S.C. § 1391(c)(2), and – regardless of Defendant's lack of specificity in its moving papers

---

[9] References herein to page numbers with the prefix "ECF" refer to the page numbers
affixed to the party's filing by the Court's Electronic Case Filing system.

[10] In its moving brief, Defendant improperly cites to subsection (b)(3) for the proposition
that venue would have been proper in the E.D. Pa. because Defendant "is subject to the court's
personal jurisdiction" there.  (Def. Mem., at 4.)  While, as discussed further herein, the question
of whether Defendant is subject to personal jurisdiction is relevant to the question of where it
may be deemed to "reside" under subsection (b)(1), amenability to personal jurisdiction is not,
standing alone, sufficient to satisfy Section 1391(b)(3).

as to the district that constitutes its principal place of business – a fair reading of Defendant's opening brief is that it is consenting to the E.D. Pa.'s exercise of personal jurisdiction over it, in connection with this action (*see* Def. Mem., at 4 (stating that Defendant is subject to jurisdiction in that district); *see also Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide"*, 412 F. Supp. 3d 338, 348 (S.D.N.Y. 2019) (collecting cases stating that a defendant may consent to personal jurisdiction).

Moreover, on reply, Defendant argues, and submits evidence to demonstrate, that its principal place of business should, in fact, be found to be within the E.D. Pa.  (*See* Def. Reply Mem., at 2-4; *see generally* Sheppard Decl.)[11]  If true, this would be sufficient to show that Defendant would be subject to personal jurisdiction in that district, *see Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 627 (2d Cir. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)), and hence that it should be deemed to reside there for venue purposes.  Of particular note, Defendant asserts, in its reply brief, that the "vast majority" of its "high level officers" work in Radnor, Pennsylvania (Def. Reply Mem., at 2), and it submits a Declaration from its Secretary, Robert Owen Sheppard ("Sheppard"), stating, with more specificity, that Defendant's "president, treasurer, appointed actuary, chief investment officer, chief financial officer, and four out of five executive vice presidents" work in that locale, at the headquarters of an affiliate, Lincoln Financial Group (Sheppard Decl. ¶¶ 3-4).

---

[11] As with respect to the arguments raised for the first time by Plaintiff, in its reply submission on its motion to amend, it would be entirely appropriate for the Court to decline to consider any new arguments raised for the first time by Defendant in its reply on its motion to transfer.  *See, e.g., Mango,* 397 F. Supp. 3d at 375.  Yet, as considering Defendant's belated arguments would not affect the Court's ultimate conclusion as to the appropriate resolution of the motion to transfer, it will exercise its discretion to consider whether Defendant's rely adequately demonstrates that its principal place of business is in the E.D. Pa.

As explained by the Supreme Court in *Hertz*, a corporation's principal place of business is "the place where [its] officers direct, control, and coordinate the corporation's activities," *Hertz,* 559 U.S. at 92-93, and, according to Sheppard, the place from which Defendant's officers (except for Sheppard himself) direct Defendant's corporate activities is, in fact, Radnor, Pennsylvania.  (Sheppard Decl. ¶¶ 3-4.)  The fact that the bulk of Defendant's business activities that are visible to the public, the location of its books and records, and its administrative offices may all be located in New York, would not compel a different conclusion.  Indeed, in *Hertz,* the Supreme Court recognized the possibility of such a scenario:

> We also recognize that the use of a "nerve center" test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332 . . . . For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York.

*Hertz,* 559 U.S. at 96.

The Court does acknowledge that certain statements that have previously been made by Defendant cast some doubt on the veracity of its current position regarding its principal place of business.  First, as Plaintiff points out, in filings required by the National Association of Insurance Commissioners ("NAIC"), Defendant has apparently identified its "statutory home office" as being in New York (*see* Pl. Mem., at ECF 8 (citing Kirkpatrick Decl., Ex. 2)), although it is not clear that a corporation's "statutory home office" should be considered its place of "residence" under the venue statute.  Second, as Plaintiff also highlights, and as is more directly on point here, Defendant – in its answer to the plaintiff's complaint in another case – admitted in 2016 that its principal place of business was in New York.  (*See* Pl. Mem., at ECF 4 (citing Kirkpatrick Decl., Ex. 1 (Defendant's Answer in *Hanks v. Lincoln Life & Annuity Co. of New York, et al.*, 16cv06399 (PKC) (S.D.N.Y.)).)  While Plaintiff has made no showing that the

court, in that other case, relied on Defendant's admission, and thus has not demonstrated that Defendant should be judicially estopped from taking a contrary position here, *see Clark v. AII Acquisition, LLC,* 886 F.3d 261, 266 (2d Cir. 2018) (application of judicial estoppel requires "that [the prior] position was adopted by the first tribunal in some manner"), the prior admission at least raises a question as to the true facts regarding where Defendant's "nerve center" is located.

In the end, though, all of this is of little moment, given Defendant's expressed willingness to subject itself to the jurisdiction of the court in the E.D. Pa.  On this basis alone, Defendant may be deemed to "reside" in that district for venue purposes, *see* 28 U.S.C. § 1391(c)(2), and to be subject to process there, satisfying the first prong of the transfer statute – which requires that the action "might have been brought" in the district to which transfer is sought, 28 U.S.C. § 1404(a).

Defendant, however, has not made a sufficient showing to satisfy the second prong of the transfer statute, as discussed below.

### B. Defendant Has Not Met Its Burden To Show That the Interests of Justice Favor Transfer.

Having concluded that this case could have been brought in the E.D. Pa., the Court turns to the question of whether granting a transfer would promote the convenience of the parties and witnesses and the interests of justice.  Upon considering each of the relevant factors, the Court concludes that each either weighs against transfer or is neutral, and that the existence of related litigation in the E.D. Pa. does not, in and of itself, weigh so heavily in favor of transfer as to dictate that this case should be transferred there in the interest of justice.

21

1.    <u>**Convenience of Witnesses**</u>

With respect to the convenience of witnesses, Defendant contends that the majority of its actuaries reside in North Carolina, and that "to the extent" such witnesses are called to testify in this case, travel to Philadelphia would be more convenient for them than travel to New York, as, if they needed to be present in Philadelphia, they could temporarily work out of Lincoln's headquarters in nearby Radnor.  (Def. Mem., at 6; Reply Mem, at 6-7.)  Defendant also notes that if Plaintiff's witnesses, like Plaintiff, are located in Texas, then there should be little difference in their convenience in traveling to New York, as opposed to Philadelphia.  (Def. Mem., at 6-7.)  Plaintiff, for its part, make no argument regarding the convenience of its own witnesses, but argues that Defendant has not specifically named any witnesses who would likely be called to testify, and that the location of Lincoln's headquarters should not be found to render Philadelphia more convenient for Defendant's witnesses than New York.  (Pl. Mem., at ECF 12-13.)

The Court is not persuaded by Defendant's arguments.  First, Defendant does not contend (nor would the Court find) that travel to New York, rather than Philadelphia, would be significantly less convenient for witnesses residing in North Carolina.  Second, "[w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district," *Royal & Sunalliance v. British Airways,* 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001), and, here, Defendant has offered no information to enable the Court to engage in such consideration.  Third, the hypothetical preference of certain unnamed witnesses for working at Lincoln's headquarters carries little weight, as Defendant has not shown the absence of any location in New York City where these witnesses could work, if necessary, and as any need for the witnesses to travel would

presumably be for the purpose of giving testimony, not for the purpose of engaging in office work.  As Plaintiff has not even suggested that New York would be more convenient for its own witnesses than Philadelphia, the Court assumes the choice is immaterial to Plaintiff's witnesses. (*See generally* Pl. Mem.)

For these reasons, the Court concludes that, overall, this factor is neutral.

### 2.   Availability of Process To Compel the Attendance of Unwilling Witnesses

The Court may only compel attendance at a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person; or . . . within the state where the person resides, is employed or regularly transacts business in person." Fed. R. Civ. P. 45(c)(l)(A)-(B)(ii).  Asserting that it is "unaware of any potentially unwilling witnesses who work or reside" within the subpoena power of this District, Defendant argues that this factor favors transfer.  (Def. Mem., at 7.)  As Plaintiff correctly notes, however, Defendant does not suggest that any "unwilling witnesses" actually exist, let alone identify who those witnesses are or where they are located.  (*Id.;* Pl. Mem., at ECF 14-15.)  Defendant's bare assertion that, because it is headquartered in Radnor, Pennsylvania, "the potential for unwilling witnesses to reside within 100 miles of the [E.D. Pa.] is far greater than the possibility that they would be found in this District" (Reply Mem., at 8), is not only unsupported, but ignores the fact that a significant portion of the E.D. Pa. (including Radnor) is actually within 100 miles of this Court.

In light of this, and absent any identification or discussion regarding any unwilling witnesses who would be within the subpoena power of the court in the E.D. Pa., but not the Court, there is no basis to conclude that this factor weighs in favor of transfer.  At best, this factor is also neutral.

23

### 3.    Convenience of the Parties

Defendant argues that its own convenience weighs in favor of transfer due to the overlap of witnesses and documents in the instant matter and the related cases in the E.D. Pa.; more specifically, according to Defendant, it would be "inconvenient and inefficient for Lincoln's actuaries to be deposed or have their emails collected and reviewed twice, instead of just once." (Def. Reply Mem., at 8.)  Defendant, however, has not explained why the denial of transfer would necessitate multiple reviews and collections of emails, especially given that the parties have agreed, regardless of transfer, to coordinate discovery in this case with discovery in the related cases.  (Pl. Mem., at ECF 2-3; *see also* Def. Reply Mem., at 4-5 (implicitly conceding that the parties have such an agreement).)  Defendant has made no attempt, in its briefing, to explain why the parties' voluntary coordination of discovery between this case and the cases currently pending in the E.D. Pa. is insufficient to address its concerns regarding inefficiency, and has not even explained how its discovery needs in the different cases overlap or are distinct. (*See generally* Def. Mem.; Def. Reply Mem.)  Defendant also does not contend that transfer would be more convenient for Plaintiff in any way.  (*See generally* Def. Mem.; Def. Reply Mem.)

Accordingly, the Court concludes that this factor is also neutral.

### 4.    Locus of Operative Facts

Plaintiff contends that "[t]he locus of operative facts" for this case "is squarely in New York" (Pl. Mem., at ECF 10), noting that "Plaintiff's insurance contracts were delivered and issued in Manhattan, . . . as were most policies in the proposed class" (*id*.).  Plaintiff also correctly notes (and Defendant does not dispute) that "courts routinely hold that in cases regarding the interpretation of insurance contracts, the locus of operative facts is wherever the

24

insurance contract was made." (*Id.* (citing, *inter alia*, *TIG Ins. Co. v. Century Indem. Co.,*

No. 08cv7322 (JFK), 2009 WL 1564112, at *3 (S.D.N.Y. June 4, 2009)).)

Based on the law aptly cited by Plaintiff, this factor weighs against transfer.

### 5.   Location of Relevant Documents

Defendant argues that the location of documents weighs in favor of transfer, but, in

essence, only argues that New York is not any *more* convenient than Philadelphia in this regard,

due to the nationwide nature of the class claims and the relative ease of electronic document

transfer and collection. (Def. Mem., at 7; Def. Reply Mem., at 7-8.)

Accepting Defendant's underlying premise, the Court finds that this factor is neutral.

### 6.   Relative Means of the Parties

Courts may consider the relative means of the parties "where [an economic] disparity

between the parties exists." *Indian Harbor Ins. Co. v. v. NL Envtl. Mgmt. Servs., Inc.,* No.

12cv2045 (PGG), 2013 WL 1144800, at *10 (S.D.N.Y. 2013) (citation omitted). Defendant

concedes, and Plaintiff does not dispute, that there is no significant disparity between the means

of the parties in this case.

This factor is therefore neutral.

### 7.   The Forum's Familiarity With the Governing Law

The "governing law factor is to be accorded little weight on a motion to transfer venue

because federal courts are deemed capable of applying the substantive law of other states." *NL*

*Envtl. Mgmt. Servs.,* 2013 WL 1144800, at *10 (internal quotation marks and citations omitted).

Moreover, as Defendant conceded, the claims in this case are governed by New York law, such

that, if anything, this factor should weigh against transfer. Yet Defendant perplexingly argues

that this factor weighs in favor of transfer, for the purported reason that the Honorable

R. Barclay Surrick, U.S.D.J., before whom the E.D. Pa. cases are pending, "is experienced in COI litigation." (Def. Mem., at 8; Def. Reply Mem., at 9.) While the Court has no doubt that Judge Surrick would capably handle this matter, and while the Court acknowledges that there may be overlapping *facts* in this case and the cases currently before Judge Surrick, Defendant has failed to explain why a federal court in Pennsylvania "is better able to determine questions of New York law than a federal court sitting in New York." *Bryant v. Potbelly Sandwich Works, LLC,* No. 17cv7638 (CM), 2018 WL 898230, at *4 (S.D.N.Y. Feb. 5, 2018).

In all, this factor weighs against transfer, although only modestly so.

### 8.   Plaintiff's Choice of Forum

Defendant argues that no weight should be accorded to Plaintiff's choice of forum in this case, as none of the key events alleged in the Complaint occurred in New York, and Plaintiff does not reside in New York. (Def. Mem., at 8; Def. Reply Mem., at 9.) Plaintiff, on the other hand, argues that its choice of forum should be accorded the "heavy weight" to which a plaintiff's choice is ordinarily entitled, especially given that the "locus of operative facts" is here. (Pl. Mem., at ECF 10-11.)

Plaintiff is correct that a plaintiff's choice of forum is generally entitled to great weight, *see, e.g.*, *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006), although, in this case, Plaintiff seeks to assert claims not only on its own behalf, but also on behalf of a nationwide class, making its choice of forum "a less significant consideration," *Ahmed v. T.J. Maxx Corp.,* 777 F. Supp. 2d 445, 450 (E.D.N.Y. 2011) (citing *Warrick v. GE Co.,* 70 F.3d 736, 741 n.7 (2d Cir. 1995)).

The Court therefore finds that this factor weighs in Plaintiff's favor, although not as heavily as it would if this were an individual action.

26

9.      **Trial Efficiency and Interests of Justice**

Having concluded that *none* of the other factors weigh in favor of transfer, the remaining

question for the Court is whether Defendant can satisfy its burden to make a clear and

convincing showing that the interests of justice favor transfer based solely on the fact that two

related cases are currently pending in the E.D. Pa.  The Court concludes, based on the totality of

circumstances presented in this case, that Defendant cannot meet its burden based solely on the

pendency of the other cases.

To be sure, as Defendant states, "[C]ourts consistently recognize that the existence of a

related action in the transferee district is a strong factor to be weighed with regard to judicial

economy, and may be determinative."  *Cain v. Twitter, Inc.,* No. 17cv122 (PAC), 2017 WL

1489220, at *3 (S.D.N.Y. Apr. 25, 2017) (quoting *In re Anadarko,* 10cv4905 (PGG), 10cv5894

(PGG), 2012 WL 12894796, at *10 (S.D.N.Y. Mar. 19, 2012)); *see generally* Def. Mem.,

at 5-6, 9.  A review of the relevant case law in this District and in this Circuit, however, reveals

that a few simple or tenuous points of similarity between cases do not compel transfer; rather,

even if a case in another district presents similar legal or factual issues, transfer will not be

warranted unless the defendant shows that the cases are *so* similar that transfer would plainly

serve the interest of judicial economy.  Thus, while, for example, transfer was ordered in

*Williams v. City of New York,* No. 03cv5342 (RWS), 2006 WL 399456 (S.D.N.Y. Feb. 21,

2006), where the related cases "encompass[ed] similar legal and factual issues, involve[d] the

same plaintiff, [we]re both suits against members of [the New York City Department of

Correction], and the City anticipate[d] calling the same witnesses in its defense in both actions,"

*id*. at *3; transfer has been denied where the actions pending in different jurisdictions have been

found not to be "coextensive," and where inconsistent judgments would not likely result, *New*

*York Marine & Gen. Ins. Co.,* 599 F.3d at 114 (affirming district court's denial of motion to transfer); *see also Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC,* No. 11cv6804 (PAE), 2012 WL 1382278, at \*5 (S.D.N.Y. Apr. 20, 2012) (where other factors were neutral or weighed against transfer, "modest benefits" of sending related case to another district did not warrant transfer); *Ahmed,* 777 F. Supp. 2d at 452 (collecting cases and declining to transfer case where plaintiffs and defendants were distinct as between related cases, despite some overlapping factual issues).

In this case, Defendant asserts that transfer is appropriate, due to overlapping discovery, factual issues, and legal issues with the cases pending in the E.D. Pa.  (*See generally* Def. Mem.; Def. Reply Mem.)  Each case, though, has been brought by a different plaintiff, against a different defendant,[12] alleging claims based on different insurance policies.  The fact that the policies are of the same type, or have similar language, does not, standing alone, render the cases so related that it would only make sense to place them before the same court for adjudication. *See Children's Network, LLC v. PixFusion LLC,* 722 F. Supp. 2d 404, 415 (S.D.N.Y. 2010) (defendant failed to show that cases were sufficiently related as to warrant transfer, merely because they were related to the same patents).  Moreover, Defendant has cited to no case law, and this Court has located none, which would support an argument that the mere existence of factually and legally similar claims asserted by and against different parties would be sufficient

---

[12] Defendant's thinly veiled suggestion in its briefing that because the same plaintiff's *counsel* brought each case, the matters are closely related, is unpersuasive.  It is hardly uncommon for a particular attorney or law firm to bring similar types of claims on behalf of different plaintiffs, against different defendants, in multiple cases, and the fact that Plaintiff's counsel here has brought similar suits against Defendant's affiliates should not be viewed as some type of coordinated conspiracy against Defendant.  Similarly, having chosen to conduct its relevant business through a corporate entity that is legally distinct from its affiliates, Defendant cannot now be heard to complain that it is being treated as a separate entity.

to warrant transfer. *See, e.g., Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012) (granting motion to transfer where related case involved "significant overlap of *parties*, facts, and issues" (emphasis added)); *Williams,* 2006 WL 399456, at *3 (transferring case where related case involved same plaintiff); *Goggins,* 279 F. Supp. 2d at 230, 234 (transferring case where related case was brought against same defendant).

In discussing the pendency of the related actions, Defendant also asserts that transfer would "facilitate coordinated discovery and avoid the unnecessary duplication of efforts" (Def. Mem., at 9), and that litigating its case in this forum may subject it to "inconsistent rulings" (Def. Reply Mem., at 6).  As noted above, however, Defendant has not fully explained to the Court the extent of overlapping discovery between this case and the related cases, and, in any event, the parties have already agreed to coordinate discovery in the cases, which this Court will permit, to the extent practicable and reasonable, thereby minimizing the potential for significant duplication of efforts.  (*See* Pl. Mem., at ECF 2-3; Def. Reply Mem., at 4-5; *see also* Dkt. 40 (reflecting joint request by the parties to adjust the discovery schedule in this case to allow for such coordination).)  In light of this, Defendant's assertions that transfer would significantly reduce the parties' discovery burdens, or save the courts significant expense or resources, are simply too vague and unsupported to allow the Court to conclude that transfer would be in the interests of justice and judicial economy.

Finally, as to Defendant's concern regarding inconsistent rulings by the courts, once again, the Court notes that Defendant is not a party in any of the actions pending in the E.D. Pa., and therefore would not be the subject of, or bound by, any rulings made by Judge Surrick, either with respect to pretrial proceedings (such as discovery) or with respect to a final disposition of

the plaintiffs' claims in the cases before him.  To the extent Defendant argues that Plaintiff, in this case, could leverage any favorable ruling in the E.D. Pa. to acquire similar rulings here, the mere possibility that another district will issue rulings that may be persuasive (not controlling) to the Court in litigating Defendant's claims does not weigh in favor of transfer.  *See Children's Network, LLC,* 722 F. Supp. 2d at 415 (party's "apprehension" regarding "inconsistent judgments" was "misplaced," as "[t]he fact that [defendant] initiated patent infringement litigation in the Eastern District of Texas involving *other parties and other products* does not entitle it to litigate all disputes concerning those same patents in that forum" (emphasis added)).  District courts across the country routinely hear similar cases, considering similar factual and legal issues as a matter of course, and not every similar case requires consolidation in the same district.  That Defendant would apparently prefer that every breach-of-contract claim against it or its affiliates involving COI provisions be litigated in the same district does not entitle it to transfer.

In short, the Defendant has the burden of persuading the Court, with "clear and convincing evidence," that the "totality of the circumstances" favors transfer.  *New York Marine & Gen. Ins. Co.,* 599 F.3d at 114.  Defendant has not demonstrated that the cases in the E.D. Pa. are so related to this case as to be determinative, especially in the absence of any other factors weighing in favor of transfer.  Upon consideration of the entirety of the presented record, the Court finds that Defendant has failed to meet its burden, and the motion for transfer is therefore denied.

## <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion to amend

(Dkt. 35) is denied, and Defendant's motion to transfer (Dkt. 22) is also denied.  The Clerk of

Court is directed to close those motions on the Docket of this action.

Dated:  New York, New York
      July 21, 2020

                              SO ORDERED.

                              DEBRA FREEMAN
                              United States Magistrate Judge

<u>Copies to</u>:

All counsel (via ECF)