USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __3/31/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VIDA LONGEVITY FUND, LP, *on behalf of itself and all others similarly situated*,

        **Plaintiff,**

-against-

LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK,

        **Defendant.**

---

19-cv-06004 (ALC)

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Vida Longevity Fund brings this putative class action against Lincoln Life & Annuity Company of New York ("Lincoln" or "Lincoln NY") alleging breach-of-contract. Plaintiff now seeks to certify the class.

For the reasons that follow, the Court finds that the proposed class meets the requirements of Rule 23(a) and the relevant requirements of Rule 23(b) of the Federal Rules of Civil Procedure. Plaintiff's motion is granted.

## BACKGROUND[1]

### A. Factual Background

Plaintiff is the beneficial owner of two life insurance policies (the "Representative Policies") issued by Lincoln NY. The policies are universal life policies. The New York Department of Financial Services describes these policies as:

> The company credits your premiums to the cash value account. Periodically the company deducts from the cash value account its expenses and the cost of insurance protection, usually described as the mortality deduction charge. The balance of the cash value account accumulates at the interest credited. The company guarantees a minimum interest rate and a maximum mortality charge.

---

[1] The following facts are taken from Plaintiff's complaint and are presumed true for the purposes of this motion.

1

ECF No. 1 ("Compl.") ¶ 3.  These policies, then, are often dual purposed, serving as both an insurance vehicle and a savings account.  And policyholders often choose these polices for their dual functions and the transparency in costs and charges associated with the policy.

Monthly deductions are broken down into discrete charges and credits: the cost of insurance ("COI") charges, other contractually-specified expenses, and crediting rates. These charges are deducted from the account value of the policy.  Upon payment of the death benefit, policyholders may choose to surrender the death benefit to the insurer.

COI charges are intended to compensate the insurer for the mortality risk of the insured.  Lincoln sets COIs "based on its expectations of future mortality experience." *Id.* ¶ 4.  The policies also state that COIs "will never exceed the guaranteed maximum rates shown in" published policy tables.  *Id.*

Mortality expectations in in the United States have improved over the last several decades, at a rate of roughly 1% per year.  "Lincoln NY's own regulatory filings confirm that Lincoln NY has benefited from this mortality improvement and that it expects these historical trends to continue into the future." *Id.* ¶ 7.  "This means that Lincoln NY has recently conducted mortality reviews and, as a result, it expects mortality rates to continue to go down and insureds to live longer." *Id.*  Given this, Lincolns cost of providing insurance has decreased.  Yet, in the relevant period, Plaintiff alleges that the COIs charged to these policies did not decline as the mortality rate declined.  As result of Lincoln's failure to adjust the COI, Plaintiff, and other Lincoln policyholders, were made to pay inflated COI charges in violation of the insurance contracts.  Plaintiff brought this suit to recover monetary damages for the COI overcharges that Lincoln NY has wrongly imposed and continues to impose on its customers.

### B.  Proposed Class Definition

Plaintiff seeks to certify the following class:

> All current and former owners of universal life insurance policies issued by Lincoln Life & Annuity Company of New York with the marketing names SUL I(New York), SUL IV (New York), ULI(New York), UL II (New York), UL III(New York), and UL LPR (New York) that were assessed a cost of insurance charge at any time on or after June 27, 2013.

ECF No. 81 at 1.

## DISCUSSION

Defendant argues that this action is not justiciable because Plaintiff lacks standing. As such the Court will address Defendant's justiciability arguments first. After which, the Court will tackle Plaintiff's motion for class certification and the Parties motions to seal.

### I. Standing

"The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975)) (alterations omitted). Plaintiff bears the burden of showing standing. *Rajamin*, 757 F.3d at 84

Article III Section 2 of the United States Constitution limits federal court jurisdiction to actual cases and controversies. "Article III or constitutional standing requires, *inter alia,* that plaintiff suffer an injury-in-fact "an injury in fact . . . which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 85.

The Plaintiff is an institutional policyholder that entered a contract with Wells Fargo regarding the rights to the Representative Policies. Under the agreement, Wells Fargo became the securities intermediary for Plaintiff's Representative Policies, but Vida remained the beneficial owner of the Representative Policies. As such, Vida remains the real party in interest

and retains the right to sue.  Defendant argues that standing does not exist here because policyholders did not suffer an injury.

First, Defendant contends that the vast majority of policy holders in the proposed class, including the named plaintiff, suffered no cognizable injury because Lincoln NY retains the cash value of the policy upon payment of the death benefit.  But this argument mischaracterizes the nature of the injury.  Plaintiff seeks recompense for a breach of contract.  Whether Lincoln NY retained the cash value of the policies has no bearing on whether it's conduct ran afoul of its contractual obligations.  One can suffer harm — here, the injury-in-fact — where damages are minimal or de minimis.  This argument fails in challenging Plaintiff's standing.

Lincoln next argues that no injury-in-fact exists for a substantial portion of the class because Plaintiff cannot prove that these policyholders were subject to an overcharge.  It argues that both the theory of liability and the damages model proposed by Plaintiff does not account for this subset of policyholders.  Defendant purports that Plaintiff must prove damages as required for a breach of contract claim under New York law.  This argument conflates the inquiries of whether Plaintiff has sufficiently pleaded the elements of a contract claim and the issue of justiciability.

The Court is unclear whether Defendant's argument goes to its claim of a lack of injury or a lack of redressability.  In any event, Defendant mischaracterizes the nature of the standing inquiry.  Plaintiff need only point to a cognizable harm, causation, and redressability.  Defendant seeks to conflate the injury-in-fact inquiry with that of a merits discussion—i.e., whether Plaintiff can prove each element of a breach of contract claim under New York law.  But whether Plaintiff has sufficiently pleaded damages is not an issue for the motion currently before this court.

Accordingly, the Court finds that Plaintiff has both prudential and Article III standing to sufficiently maintain this suit.

## II.     Class Certification

### A. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class certification. That is, plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Plaintiff moves for certification pursuant to Rule 23(b)(3). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

### B. Numerosity

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate. *Cent. States Se. & Sw. Areas Health & Welfare Fund v.*

*Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Plaintiff alleges that the class consists of 729 policyholders, significantly above the 40-plaintiff threshold ordinarily employed by district courts in this Circuit. Defendant argues that 95% of these policyholders hold policies that surrenders the cash value to Defendant upon payment of the death benefit. Given this, Defendant contends, the actual number of policyholders in the proposed class with a cognizable injury is insufficient to warrant the use of the class action procedural vehicle. As explained above, this argument incorrectly conflates the injury-in-fact inquiry with the merits inquiry on a breach-of-contract claim. Given this, the Court finds that Plaintiff's class, as currently defined, is sufficiently numerous to warrant the use of a Rule 23 class action.

### C. Commonality and Predominance

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007), "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350. Plaintiffs need only "demonstrate that the class members 'have suffered the same injury." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and alterations omitted). That is, "factual differences in the amount of damages, date, size, or manner of purchase, the type of purchase, the presence of both purchasers

6

and sellers . . . will not defeat class action certification where plaintiffs allege that the same unlawful course of conduct affected all member of a class." *Sumitomo*, 182 F.R.D. at 92.

"The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are *more substantial* than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002). Predominance does not require the absence of individualized damages, but plaintiffs' damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Plaintiff contends that all policyholders have an interest in proving a number of common claims. Not least of these is a breach-of-contract as a result of the failure to account for declining mortality rates in COI computations.

Defendant argues, however, that individualized inquires predominate because the factfinder must determine whether each policyholder intended to use the amount in their cash value account. In other words, Defendant believes that policyholders who had no intention to use the cash value account suffered no injury, and therefore no damages, from its breach. This argument, closely mirroring the Defendant's standing arguments, also fails. Whether or not the policyholders planned to use the cash value is of no consequence to the central issue in this matter—the breach of contract. A policyholder could have planned to invest the cash value at a later point in life, while another holder could have planned to surrender the value to Defendant

7

upon payment of the benefit.  As discussed above, Defendant's failure to abide by its contractual obligations is an injury-in-fact.

All policyholders have a common interest in the calculation of the extent of disparity in the COI charges that were debited from the cash value accounts and the COI charge that would have been charged had Defendant incorporated declining mortality rates.

### D.  Typicality

Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Id.*  "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000).  But "[A] representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members."  *Natural Gas*, 231 F.R.D. at 184 (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)).

Defendant argues that Vida is an atypical policyholder among the putative class because it is an institutional policyholder and has contracted away some of its rights in the policy.  These arguments are unavailing.  The claims of all policyholders in the putative class arise from Defendant's failure to account for mortality rates as it was obligated to do.  Neither Vida's status as an institutional holder nor its agreement with Wells Fargo have any meaningful bearing on this inquiry.  As such, the Court finds that Vida's claims are typical of the putative class.

### E. Adequacy

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077–78 (2d Cir. 1995) (quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Defendant's principal argument against Plaintiff is that his attorneys, Susman Godfrey, have litigated a number of COI cases and may adjust the contours of the class to collect higher fees. The latter proposition rests on Defendant imposing its own theories of the case onto Plaintiff's complaint. But it is long settled that a plaintiff is the master of its complaint. If Plaintiff sees fit to adjust the definition of its proposed class, the Court sees no reason why this should weigh against the viability of its claims.

Defendant also raises concerns regarding Susman Godfrey's expertise in these COI cases. They argue Plaintiff's counsel's history of litigating COI cases may raise a conflict where they take, or perhaps fail to take, a position contrary to arguments they have made on behalf of other clients. The Court has found no authority for the supposition that counsel's past representation

renders them incapable of zealous advocacy. In arguing against the adequacy of counsel, Defendant purports to do so out of concern for the putative class, which appears to be a more pronounced conflict between the putative class and counsel.

Accordingly, the Court finds Plaintiff's counsel is an adequate counsel for the purposes of Rule 23(b).

### F. Implied Requirement of Ascertainability

Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). Ascertainability is satisfied where a class is "identified by subject matter, timing, and location." *Id.* at 269-70.

Defendant's arguments regarding the ascertainability of Plaintiff's proposed class is merely a repackaged standing argument. They argue that the proposed definition forces the Court to delve into inquiries into the intention of each policyholder. They argue that the intention of each policyholder is an essential inquiry in this case. Here, again, Defendant's argument is akin to the Defendant's standing argument. Having already addressed the issue of standing, the Court will not reiterate the fallacies of the argument. The proposed class is limited in scope such that identifying class members would not be unwieldy. As such, Plaintiff's proposed class satisfies the the Second Circuit's requirement of ascertainability.

### G. Superiority Under Rule 23(b)(3)

Plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P.

23(b)(3)(D).

Defendant has presented no valid reason why this case would be unmanageable by this Court. If issues of manageability arise at a later stage in this litigation, the Court "may decertify [the] class if it appears that the requirements of Rule 23 are not in fact met. *Mazei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (citing *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982)).

### III.   Motions to Seal

The Parties filed motions to seal in conjunction with their memoranda in response to Plaintiff's motion for class certification. On January 18, 2022, the Court ordered the Parties file additional justification for these motions. In response, Plaintiff filed a letter withdrawing their motions to seal and opposing Defendant's motion to seal. Naturally, Defendant opposed Plaintiff's request arguing that it was untimely because Defendant's motion to strike was filed on August 6, 2021. The Court agrees and considers only the merit of Defendant's motion to seal.

When considering a motion to seal, the court must first determine whether the documents at issue are judicial documents. "In determining whether a document is a judicial record, we evaluate the 'relevance of the document's specific contents to the nature of the proceeding' and the degree to which 'access to the [document] would materially assist the public in understanding the issues before the . . . court, and in evaluating the fairness and integrity of the court's proceedings." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir. 2013)).

If the court determines that the documents in question are judicial documents, then the common law presumption of access attaches. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). "[T]he weight to be given the presumption of access must be governed

by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* "[A]fter determining the weight of the presumption of access, the court must "balance competing considerations against it." *Id.* at 120.  In addition to the common law right of access, there is a strong First Amendment presumption of public access to judicial documents and proceedings.  *See id.* at 110, 119–20, 123–24.  However, court documents may be sealed if "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13 –14 (1986) (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).

After careful review of the Parties submissions, the Court concludes that, the Defendant's motion to seal should be granted.  Defendant wishes to seal documents referencing internal pricing methodologies, confidential internal communication, specific features of proprietary insurance products, and various other proprietary methodologies.  However, a number of Defendant's proposed redactions do not fall within these categories redactions.  The following proposed redactions are denied:

- ECF No. 83 Defendant's Opposition to Plaintiff's Motion for Class Certification.
    - Proposed redactions on page 3-7, 10, 12-18 are denied.
- ECF No. 84-1 Ex. 1 to MOL: Merrill Expert Report
    - The proposed redactions to paragraphs 118-20 are denied.
- ECF No. 84-5 July 2, 2021 Deposition Transcript of Robert Mills
    - This document does not warrant sealing.  The responses contained in this deposition excerpt reflect the hypotheses of Plaintiff's damages excerpt and Plaintiff's theory of liability.  The responses do not identify a particular policy or specific terms.  As such, the filing of the unredacted excerpt does not pose a competitive threat to the Defendant.  Defendant's opposition to the class certification motion relies heavily on the damages theory presented by Mills.  The Court finds that Defendant's arguments for sealing do not outweigh the presumption.
- ECF No. 84-6 July 9, 2021 Deposition Transcript of Craig Merrill
    - The proposed redaction notes Merrill's opposition to Mill's damages theory.  It does not betray any proprietary information.  The notion that the

> Defendant's expert disagrees with the Plaintiff's expert is not a surprising one. The proposed redaction does not contain other information.

- ECF No. 77 Plaintiff's June 21, 2021 Memorandum of Law in support of Class Certification
    - The redactions on pages 1-2 are denied.
    - Save for the redacted clause on page 5 beginning with "as well as numerous internal Lincoln NY documents," the proposed redactions are rejected. Those proposed redactions do not contain information for which sealing is necessary.
    - On page 8, the proposed redactions in the first full paragraph and last paragraph are denied.
- ECF No. 79-19 Expert Report of Robert Mills, served by Plaintiff on March 1, 2021
    - The proposed redaction on page 11 is rejected.
- ECF No. 95 Reply Memorandum of Law in Support of Plaintiff's Motion for Class Certification
    - The proposed redaction of the figure on page 4 is denied.

## CONCLUSION

For the reasons above, Plaintiff's motion for class certification is **GRANTED**, and Defendant's motion to seal is **GRANTED** in part and **DENIED** in part. The Parties are hereby **ORDERED** to file redacted versions of the documents referenced above on ECF within 30 days of the filing of this Order. The Court reserves the right to request additional briefing on whether these documents should remain sealed at a later stage in this litigation.

The Clerk of the Court is respectfully directed to terminate ECF Nos. 80, 81, 85, 97, 102.

**SO ORDERED.**
Dated:   March 31, 2022
         New York, New York

*[signature]*

**ANDREW L. CARTER, JR.**
**United States District Judge**