USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _3/29/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VIDA LONGEVITY FUND, LP,** *on behalf of itself and all others similarly situated,*<br><br>         **Plaintiff,**<br><br>     -against-<br><br>**LINCOLN LIFE & ANNUITY COMPANY OF NEW YORK,**<br><br>         **Defendant.** | **19-CV-06004 (ALC)**<br><br><u>**OPINION AND ORDER**</u> |

**ANDREW L. CARTER, JR., United States District Judge:**

   Plaintiff Vida Longevity Fund, LP ("Vida" OR "Plaintiff") bring this class action suit against Defendant Lincoln Life & Annuity Company of New York ("LLANY" or "Defendant") (collectively "Parties") for breach of contract in violation of New York state law. The Parties also moved to seal certain portions of filings made in this case. For the reasons stated below, Defendant's motion for summary judgment is **GRANTED in part and DENIED in part** and the Parties' motions to seal are **GRANTED in part** and **DENIED in part**. Defendant's motion for oral argument is also **DENIED**.

**BACKGROUND**

  **I.**  **Procedural History**

   Plaintiffs initiated this action on June 27, 2019. ECF No. 1 ("Compl."). In their Complaint, Plaintiffs requested Class Action certification pursuant to Federal Rule of Civil Procedure 23(b)(3). *Id.* at ¶¶ 36-43. LLANY filed an Answer on September 27, 2019 and the Parties engaged in discovery. ECF No. 18. Following Defendant's unsuccessful attempt to transfer this case to the Eastern District of Pennsylvania, *see* ECF Nos. 22, 45, Plaintiff formally moved for, and this Court granted, certification of their proposed class of policyholders. ECF

Nos. 81, 121.  Defendant moved for summary judgment on April 19, 2023.  ECF No. 143.

## II. Factual Background

The following undisputed facts are drawn from the Plaintiff's Complaint, the Parties' 56.1 statements, and documents relied upon therein.

Plaintiff, a beneficial owner of two life insurance policies issued by LLANY, claims that Defendant LLANY breached its contractual obligations to a class of its universal life insurance policyholders by charging them higher "Cost of Insurance" ("COI") fees than contractually permissible.  Compl., ECF No. 1 at ¶ 1.  The Class Policies define "Cost of Insurance" as "[t]he amount charged by the Company to provide for the death benefit coverage under the policy." ECF No. 164, SUMF at ¶ 5.  The Policies state that the "[m]onthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience, and a portion of such cost of insurance rates may represent a recovery of expenses associated with the administration of the policy; such recovery may be greater in the early policy years." *Id.* at ¶ 10. Elsewhere, the Policies also state that COI rates are "based on the sex, attained age (nearest birthday) and Premium Class of the person insured as described under the 'Cost of Insurance Rates' provision." *Id.* at ¶ 11.  LLANY develops and records "GAAP best mortality rate assumptions that apply to all of its life insurance business" on an annual basis based upon "reviews [of] its actual mortality experience" and often includes those mortality rate assumptions in "regulatory submissions" to New York State officials.  *Id.* at ¶¶ 31-35.

LLANY did not simply set the initial COI rates for the Class Policies at its then-existing mortality rate assumptions.  Rather, its initial COI rates were greater than those mortality rate assumptions.  LLANY states that they arrived at initial COI rates in excess of the initial mortality rate assumptions after considering "product goals, . . . regulations and regulatory guidance, . . .

[and] project[ed] cash flows." *Id.* at ¶ 37. Plaintiff refers to this amount charged above the Defendant's calculated mortality rate in the initial COI rates as a "mortality margin." *Id.* In an actuarial memorandum submitted to New York insurance regulators for one of the Class Policies, LLANY stated that they would calculate COI rates in months following the initial rates set "by varying only the anticipated mortality experience for future policy duration." *Id.* at ¶ 48.

Even though Defendant's future mortality rate assumptions have declined overall since they set their initial COI rates, LLANY has never lowered their COI rate scales for any of the Class Policies. *Id.* at ¶¶ 40-41. While Plaintiffs concede that LLANY charged COI rates lower than their then-current GAAP mortality rates for at least some of the Class Policies during some months, their evidence also shows that the opposite was the case for many other months. *Id.* at ¶¶ 15, 41.[1]

## STANDARDS OF REVIEW

### I. Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the

---

[1] In so stating, LLANY disputes Plaintiff's claim that the additional amount charged was formulated using a specific formula. SUMF at ¶ 37. While LLANY disputes any claim that the decreases in their GAAP future mortality rate assumptions decreased "consistent[ly] and uniform[ly]," they do concede that Defendant's evidence shows that the mortality rate assumptions applied to the Class Policies are "lower than the mortality rate assumptions considered when LLANY priced the policies." *Id.* at ¶ 41.

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome of the suit under the governing law"). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

## II. Sealing

There is a "long-established general presumption in favor of public access to judicial documents." *Moore v. Experian & TransUnion*, 2023 U.S. Dist. LEXIS 203912, at *2 (S.D.N.Y. Nov. 9, 2023) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)). This presumption is based upon two "related but distinct" rationales: "a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cty. Of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). The presumption of access applies to all "judicial document[s]," which are those "item[s] . . . relevant to the performance of the judicial function and useful in the judicial process." *Lusgoch*, 435 F.3d at 119. To determine the weight to be given to the presumption of access to judicial documents, a reviewing court must assess "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (stating that the weight of the presumption lies on a continuum between "matters that directly affect an adjudication to matters that come within a court's purview solely to insure

their irrelevance"). Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it" which may "include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Lusgoch*, 435 F.3d at 119.

Where the submissions "directly affect" the court's adjudication of the case, there is "a strong presumption of access." *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08 CV 10367 (PGG), 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009). In order to rebut such a presumption, the moving party "must offer specific facts 'demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Lugosch*, 435 F.3d at 120). "[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test [for sealing judicial documents]." *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655, 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012). Importantly, "[t]he mere existence of a confidentiality agreement . . . does not demonstrate that sealing is necessary." *Church Ins. Co.*, 2010 WL 3958791, at *3; *see also De Kafati v. Kafati Kafati*, No. 22-CV-9906 (VSB), 2022 WL 17552457, at *1 (S.D.N.Y. Dec. 9, 2022) ("The presumption of public access to judicial documents is not overcome simply because the documents are covered by a confidentiality agreement."). "The party seeking to place the judicial documents under seal bears the burden of overcoming the presumption of public access." *Rogers v. Henry*, No. 16-cv-5271, 2017 WL 5495805, at *5 (E.D.N.Y. Sept. 12, 2017) (collecting cases).

## DISCUSSION

### I.     Summary Judgment

"Under New York law, to establish a breach of contract a plaintiff must plead and prove the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii)

damages suffered as a result of the breach." *Mun. Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 390 (S.D.N.Y. 2002). Under the state law, "[t]he construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003). The reviewing court must determine the parties' intent as established "from the plain meaning of the language employed," *In re Lehman Bros. Inc.*, 478 B.R. 570, 2012 WL 1995089, at *11 (S.D.N.Y. 2012) upon "giv[ing] full meaning and effect to all provisions." *Katel Ltd. Liab. Co. v. AT&T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (quotation marks omitted). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d, 675, 680, 16 N.Y.S.3d 21, 37 N.E.3dd 78 (2015) (internal citation omitted).

Generally, "[a]mbiguity in a contract arises when the contract . . . fails to disclose its purpose and the parties' intent . . . or where its terms are subject to more than one reasonable interpretation." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244, 997 N.Y.S.2d 339, 21 N.E.3d 1000 (2014) (internal citations omitted). Ambiguities exist in insurance contracts specifically "where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000) (internal citation and quotation omitted). Once found to be ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander & Alexander Servs. Inc.,*

*v. These Certain Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998). If the extrinsic evidence resolves the ambiguity, the rule of *contra proferentem* need not be applied. *See Am. Com. Lines, LLC v. Water Quality Ins. Syndicate*, 403 F.Supp. 3d 312, 330 (S.D.N.Y. 2018). If the ambiguity remains, "then the burden shifts to the insurer to prove that its interpretation is correct: if extrinsic evidence is available but inconclusive, the burden shifts at the trial stage." *Morgan Stanley Group Inc.*, 225 F.3d at 276.

The Parties agree that enforceable contracts did exist between Class Members and the Defendant during the relevant time period but disagree regarding whether Defendant's conduct constituted breach and on the amount in damages Plaintiff may be entitled to. Plaintiffs argue that the contractual term stating that "[m]onthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience" sets upon the Defendant an affirmative obligation to alter COI charge rates in accordance with fluctuations in their reported future mortality rate assumptions. SUMF ¶ 10. LLANY argues for summary judgment in their favor against Plaintiff's interpretation by claiming that: (1) LLANY is permitted to consider other actuarial variables when setting the Class Policies' monthly COI rates and is not limited to exclusively considering its future mortality rate assumptions; (2) LLANY was under no contractual obligation maintain its original "mortality margin;" and (3) LLANY was under no contractual obligation to lower its COI rates even when its future mortality rate assumptions improved.

For the reasons stated below, this Court concludes that while the Class Policies did not lay upon the Defendant an unambiguous obligation to exclusively consider their mortality rate assumptions when setting COI rates, they did confer upon the Defendant an obligation to alter their COI charges where their annual mortality rate assumptions substantially or significantly changed.

A. "Based On"

LLANY is correct that the contractual provision stating that COI rates would be "based on its expectations as to future mortality experience" does not mandate exclusive consideration of the singular variable. While there is no binding precedent on the question in this Circuit, the Seventh Circuit in *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145 (7th Cir. 2013) and the Eleventh Circuit in *Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 F.App'x 451 (11th Cir. 2021) have both considered similar COI provisions and concluded they do not connote exclusivity. In *Norem*, following review of a pair of dictionaries, the Seventh Circuit determined that the plain meaning of the phrase "based on" was: (i) "a main ingredient;" (ii) "a supporting or carrying ingredient;" (iii) "the fundamental part of something;" (iv) "[s]omething on which a thing stands or by which it is supported;" or (v) "[t]he principal ingredient, the fundamental element" - none of which imply exclusivity. 737 F.3d at 1149-1150. The *Norem* Court went on to state that an interpretation of the phrase which binds an insurer to consider only those factors listed ignores the "reality of insurance" which requires contractual "consideration [over and above] the cost of services rendered." *Id.* at 1152, 1155. Later, the Eleventh Circuit in *Slam Dunk* agreed with *Norem*'s reasoning, finding that interpreting "based on" to mean "based only on" or "based on . . . and nothing else . . . [would] run[] afoul of basic principles of contract interpretation that courts do not add words to a contract." 853 F.App'x at 454.

Another provision of the Class Policy contracts—a section which states that COI rates are "based on the sex, attained age (nearest birthday) and Premium Class of the person insured as described under the 'Cost of Insurance Rates' provision"—is also instructive on the non-exclusivity of the earlier prepositional phrase. SUMF ¶ 11. The existence of another phrase in the contract which states that COI rates are determined in consideration of variables other than LLANY's anticipated mortality assumptions renders Plaintiff's argument ineffective. Reading the

contract in its entirety, it is apparent that the COI rate is not determined exclusively upon the singular variable of future mortality assumptions, but *by its own text* requires consideration of other variables. Additionally, it can not be the case that the reference to the variables of "sex, attained age (nearest birthday), and Premium Class" is employed simply insofar as those variables form the mathematical basis for LLANY's determination of future mortality assumptions. First, these three variables are necessarily combined in some actuarial computation that converts them from the simple characteristics of an insured person into the kind of quantification that LLANY uses to set its COI rate. That actuarial computation—rigid and persistent formula or otherwise—is not referenced anywhere in the Policies' operative text. Yet, it is obvious that such actuary must form some element of the "base" of Defendant's COI rate determinations. Second, and more generally, the contractual language does not explicitly limit Defendant's consideration of these variables only to those situations where they are using them to construct their future mortality rate assumptions. There are two separate provisions in the Class Policies which state what the COI rate is "based on." These two provisions list different variables that the Defendant can permissibly consider. These two provisions do not at all limit the consideration of their respective variables insofar as one set of variables makeup the underlying data for the other. Therefore, it would not be reasonable to interpret these contractual terms as mandating the solitary consideration of expected future mortality experience when setting COI rates.

      Plaintiff's reliance on this Court's decision in *Fleisher v. Phoenix Life Insurance Company*, 18 F.Supp. 456 (S.D.N.Y. Apr. 29, 2014) is not persuasive. In *Fleisher*, the defendant insurance company chose to increase the COI rates of those insurance policies which were less remunerative by incorporating an additional factor—the value of the Policy—into their calculation of COI rates. 18 F. Supp. at 464-466. Whereas the *Fleisher* plaintiffs argued that consideration of policy value

was impermissible because it was not one of the six enumerated factors the operative policies stated the COI rate would be "based on," the insurance company argued that their actions were permissible because the policy value was a constituent component of several of those "specifically enumerated factors." *Id.* at 465, 470; *see also id.* at 470 (referring to contractual language stating that the COI rate "will be based on [defendant's] expectations of six specifically enumerated factors: future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions") (internal quotation marks omitted).  In denying summary judgment, the *Fleisher* Court did not decide which interpretation of the suspect policies was correct, but simply stated that the two sides had both presented reasonable interpretations of the contract in satisfaction of New York state law's standard which asks a reviewing court only to consider whether "the insurer's interpretation of the contract [is] the only reasonable and fair construction." *Id.* 469; *see also id.* at 470-474.  The *Fleisher* Court's statement that it found the plaintiff's interpretation of "based on" to be more "natural" was not core to its ultimate holding. *Id.* at 470.

Nevertheless, insofar as *Fleisher* might stand for the proposition that the contractual term "based on" connotes exclusivity, this Court disagrees.  The existence of a general maxim by which certain figures are or will be determined does not, by itself, establish exclusivity.  For example, while it is generally true that "a baseball player's batting average [is calculated] based on his number of hits and his number of at bats," that calculation does not include any sacrificial bunts a player may make.  *Id.* at 471.  Similarly, the area of a rectangle is as much "based on" the length of a diagonal bisecting two opposing corners as it is "based on its width and length."  *Id.* Additionally, an object's velocity is "based on distance and time" as well as air resistance and the coefficient of friction of the surface on which it travels.  *Id.*

What's more, the reason undergirding the *Fleisher* Court's statements are not applicable to this contract. The *Fleisher* plaintiffs wanted to prevent the defendant from increasing COI rates by considering anything outside of those six enumerated variables the suspect contracts explicitly permitted. *Id.* at 470-471; s*ee also Vogt v. State Farm Line Ins. Co.*, 963 F.3d 753, 763-64 (8th Cir. 2020) (upholding a jury verdict of liability against the defendant insurer who similarly "incorporate[d] other, unlisted factors into" charges). Yet, Plaintiffs in this case do not argue that the Defendant has impermissibly considered any non-enumerated variables at all. Rather, they argue that the Defendant has *exclusively* considered the permitted variables of "sex, attained age (nearest birthday) and Premium Class" in its expectations of future mortality experience and has failed to decrease COI rates as its expectations of future mortality experience improve.

Moving on, while this Court concludes that the text of the contract does not mandate exclusive consideration of LLANY's expected future mortality experience, this does not mean that the Defendant is free to do away with all considerations of its calculated mortality rates. The Class Policies do unambiguously state that those variables upon which the Defendant agreed it would base its monthly COI rates must constitute the main or a significant ingredient in its calculations. *See Norem,* 737 F.3d at 1149-1150. Going further, employing the canon of construction of *noscitur a sociis*, one could say that the contract permits LLANY's consideration of factors similar in kind to "expected future mortality experience," "sex, attained age (nearest birthday) and Premium Class" inclusive of widely employed mathematical computations utilized to combine these variables. Defendant would be liable where the decrease in their mortality rate assumptions were so significant that the lack of a corresponding decrease in COI rate determinations would cause the Class Policy terms to ring hollow. Here, Plaintiffs have presented sufficient evidence that would permit a reasonable jury to conclude that LLANY improperly maintained its COI rates

despite substantial decreases in their mortality rate assumptions for at least one of the Class Policies.

    B.  <u>Obligation to Lower COI Rates</u>

The Court's holding above would itself ring hollow if the Class Policies did not obligate LLANY to lower their COI rates at all, no matter the circumstances, as Defendant argues. ECF No. 148 ("MSJ") at 19-21. As previously stated, the operative language states that "[m]onthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience." *Id.* at 19. Defendant argues that the contractual text does not ever obligate them to lower COI rates, but rather would only "require[] [Defendant] to consider at least one factor when it determines COI rates" while "not compel[ling them] to reexamine COI rates over the life of a policy." *Id.* at 20 (citing *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, No. 2:18-cv-01290-MHH, 2022 U.S. Dist. LEXIS 140515, at *6 (N.D. Ala. Aug. 8, 2022)). Such an interpretation of the contractual terms is unreasonable and asks this Court to read executed terms of the contract as surplusage. As stated by the Court in *Yue v. Conseco Life Ins. Co.*,

> [a]t minimum, the phrase "based on," in its ordinary and popular sense, means that there must be a significant relationship between a number and any change in a variable that number is "based on," particularly when only one variable is mentioned. *If the variable changes one way and the number does not reflect that change, then the Court must infer that the number is no longer "based on" that variable*—that, instead, the principal factor the number is "based on" is something else. If, for example, an employer provided that an employee's commission is "based on" the number of sales he makes, but the employee's commission decreases even though his sales have increased, it is obvious that his commission is not really "based on" his sales.

282 F.R.D. 469, 481 (C.D. Cal. 2012) (emphasis in original). Therefore, contrary to Defendant's argument, the Class Policies do not require LLANY to redetermine the COI rates "monthly," but only whenever the mortality rate assumptions on which the COI rates are based substantially fluctuate in the manner discussed previously. MSJ Reply at 7.

C. <u>Damages</u>

Under New York law, a breach of contract plaintiff "is entitled, as a matter of law, to recover market value damages to the extent that they can be proven with reasonable certainty." *Schonfeld v. Hilliard*, 218 F.3d 164, 182 (2d Cir. 2000). Damages need only be proven "by a preponderance of the evidence." *Process Am. Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016). Once proven, "the burden of uncertainty as to the amount of damage" lies with the defendant. *Id.* To be awarded, damages "may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co. v. Erie Cty.*, 67 N.Y.2d 257, 493 N.E.2d 234, 235, 502 N.Y.S.2d 131 (1986).

Plaintiff's damages methodology seeks to "recover damages equal to COI overcharges imposed by LLANY." ECF No 149-1 at ¶ 13. To that end, Plaintiff calculates COI overcharges by ascertaining the difference between the actual COI charged and the COI that ought to have been charged but-for Plaintiff's failure to lower COI rates in response to annual improvements in their mortality rates. Such a damages formulation generally "provide[s] the most reasonable basis for measuring harm" in this case. *Vogt*, 963 F.3d and 770.

Yet, Plaintiff's damages methodology as to those 22 Class members for whom a death claim was paid but no monthly premiums were paid during the limitations period is inappropriate. Because they had "level" death benefit option policies, these Class members received the full death benefit to which they were respectively entitled, regardless of their policies' account value. SUMF at ¶¶ 6, 18. Following the death benefit payout, the account value remaining in these Class members' policies reverted to LLANY and no premium payments were collected. MSJ Reply at 8-9. Despite there having been no COI overcharge during the limitations period for these Class members, Plaintiff calculates damages here as constituting the difference in the actual and but-for

reverted *account values*. Such a damages calculation can not stand where, as here, the Class members were never charged the offending COI during the actionable time period and have no effective property interest in the account value during the actionable time period. It can not be that Class members who were never actually overcharged during the limitations and Class Periods can be entitled to damages constituting the difference in actual and but-for COI monthly rates. Plaintiff cites to no compelling case law approving damages to a non-breaching party who made no payment to an insurer during the limitations period. *See* MSJ Reply at 9 ("In *Vogt*, the Court found that State Farm had waived its challenge to plaintiff's damages model and considered its objection on appeal only 'to the extent it challenges the sufficiency of the evidence.' 963 F.3d at 769. In *Prusky*, the policy remained in force (as opposed to the fully paid-out policies here). *See Prusky v. Aetna Life Ins. & Annuity Co.*, No. 03-6264, 2004 WL 2384967, at *6 (E.D. Pa. Oct. 25, 2004)."). Plaintiff's citation to this and other Court's analyses of damages claims in the context of standing and class certification do not alleviate Plaintiff of its burden under New York law to prove reasonable certain and traceable damages. *See* MSJ Opp. 22-23; *see also Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of N.Y.*, No. 19-cv-06004 (ALC), 2022 U.S. Dist. LEXIS 60778, at *11 (S.D.N.Y. Mar. 31, 2022) (analyzing policyholders' interest in properly calculated COI rates when considering commonality under Rule 23(b)(3)); *Advance Tr. & Life Escrow Servs., LTA v. ReliaStar Life Ins. Co.*, No. 18-2863 (DWF/BRT), 2022 U.S. Dist. LEXIS 57067, at *13 (D. Minn. Mar. 29, 2022) (making similar analyses with regard to plaintiff's standing to bring suit).

Thus, only those damages pleaded as to Class Members who were actually forced to pay offending COI rates are cognizable.

D. Statute of Limitations

Defendant also argues that at least some of Plaintiff's claims are time-barred. Defendant

claims that Plaintiffs were injured not in every month COI charges were taken from Class members' account balances, but rather only annually when LLANY reported out its mortality rate assumptions applicable to the following year. MSJ at 23-25. Under LLANY's theory, Plaintiff can not recover damages for COI rate overcharges that occurred in 2013 because the mortality rate improvements applicable to that year were calculated and reported in 2012. Defendant states that Plaintiffs are "barred from recovering continuing overcharges during the limitations period that flow from breaches of contract that are outside the limitations period." MSJ at 25. They go on to argue that "Plaintiffs can [only] recover [for] harm that occurred when LLANY deducted COI charges using COI rates that failed to account for improvement in mortality rates that occurred since the start of the SOL" and that the "earlier improvement from pricing through June 26, 2013, is time-barred." MSJ Reply at 10.

Defendant cites to no New York state case law supporting their argument. Rather, they cite only to dicta from the Northern District of Alabama decision in *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, which states that "subsequent applications of those inflated rates to determine the monthly cost of insurance would not necessarily constitute successive breaches; they would instead only determine when Plaintiff sustained its injuries." No. 2:18-CV-1290-KOB, 2019 U.S. Dist. LEXIS 160338 at *17 (N.D. Ala. Sept. 20, 2019). Setting aside the fact that the *Protective* decision does not itself strongly endorse Defendant's view of the law, New York law is not on LLANY's side. Under the state law, "[a] cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). "If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Id.* at 150; *see also Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 389 N.E.2d 130, 132, 415 N.Y.S.2d 817 (N.Y.

1979); *Stalis v. Sugar Creek Stores, Inc.*, 295 A.D.2d 939, 744 N.Y.S.2d 586, 587-88 (App. Div. 2002); *Orville v. Newski, Inc.*, 155 A.D.2d 799, 547 N.Y.S.2d 913, 914 (App. Div. 1989); *Airco Alloys Div. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 430 N.Y.S.2d 179, 186 (App. Div. 1980). Therefore, every month in which LLANY improperly deducted COI charges from Class member's accounts constitutes breach. Plaintiff's claims are not time-barred as they are in no way attempting to recover for harms that pre-date the applicable six-year statute of limitations.

## II.     Sealing

Upon careful review of the Parties submissions, the Court finds that the majority of the Parties' motions to seal should be granted because they reference or contain internal pricing methodologies, confidential internal communications, specific features of proprietary insurance products, and various other proprietary methodologies and because Defendant's proposed redactions are narrowly tailored to serve their cognizable interests. However, the Court finds that the Defendant has insufficiently articulated cognizable competitive harm that might result from the disclosure of those decades-old documents presented in ECF No. 157-12, 157-13, and 157-14 as well as those internal interpretive documents at ECF Nos. 157-26 and 157-29. As such, the Court denies the request to file these documents under seal and **ORDERS** Plaintiff to file these five documents with their proposed redactions. Defendant is also hereby **ORDERED** to publicly file those documents with updated redactions preserved at ECF No. 186. The Parties are also hereby **ORDERED** to re-file their memoranda of law, Rule 56.1 statements of fact, and corresponding exhibits in compliance with this Court's determinations. All such document filings should be made on or by April 12, 2024.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is **GRANTED in part and DENIED in part** and the Parties' motions to seal are **GRANTED in part and DENIED in part**. The Clerk of the Court is respectfully directed to terminate ECF Nos. 143, 151, 165, 168, 169, 178, 182, and 187.

**SO ORDERED.**
Dated: March 29, 2024
      New York, New York

*[signature]*
**ANDREW L. CARTER, JR.**
United States District Judge